Tony Ezzerret MASON, Appellant

v.

The STATE of Texas, Appellee.

No. 10-06-00409-CR.

Court of Appeals of Texas,
Waco.

Sept. 12, 2007.

Rehearing Overruled Oct. 9, 2007.

---

Dan D. Cox, Waxahachie, for Appellant.

Joe F. Grubbs, Ellis County Dist. Atty., Waxahachie, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

Mason appeals his convictions for capital murder in which the State did not seek the death penalty and for intentional serious bodily injury to a child. *See* TEX. PENAL CODE ANN. § 19.03 (Vernon Supp.2006),

§ 22.04(a)(1), (e) (Vernon Supp.2006). We affirm.

In Mason's one issue, he complains of the trial court's qualification of the venire panel. Mason argues generally:

Even before any of the jurors heard a single witness, the trial judge had told them he was capable of handling the case without a jury, that the only reason the case had not settled previously was because one of the parties was being unreasonable, that defendants are presumed innocent but are not, and that the jury can fudge on the beyond-the-reasonable-doubt standard because it is a subjective standard. Appellant had to proceed under the shadow of comments that one of the parties was being unreasonable in having a jury trial in the first place. In the context of the trial that thereafter developed, the jurors would have known precisely about whom the trial judge was referring, which would have only further tipped the scales in the State's direction.

(Mason Br. at 14–15.) Mason's argument does not fairly represent the trial judge's admonitions.

▇▇▇ Mason did not object to the admonitions of which he complains. The Texas Rules of Appellate Procedure provide, "As a prerequisite to presenting a complaint for appellate review, the record must show that ... the complaint was made to the trial court...." TEX.R.APP. P. 33.1(a). The Rules of Appellate Procedure also provide, however, "In a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court." TEX.R. EVID. 103(d). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only ... all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Neal v. State,* 150 S.W.3d 169, 174 (Tex.Crim.App.2004) (quoting *Mendez v. State,* 138 S.W.3d 334, 342 (Tex.Crim. App.2004)); *accord Reyna v. State,* 168 S.W.3d 173, 177 (Tex.Crim.App.2005); *Martinez v. State,* 91 S.W.3d 331, 335–36 (Tex.Crim.App.2002); *Marin v. State,* 851 S.W.2d 275, 278–80 (Tex.Crim.App.1993); *see Barnett v. State,* 189 S.W.3d 272, 278 (Tex.Crim.App.2006). Mason cites *Blue v. Texas* for the proposition that "comments tainting the presumption of innocence in front of the jury are fundamental error, of constitutional dimension, and require no objection." (Mason Br. at 9 (citing *Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App. 2000) [(plurality op.)])); *but see Brumit v. State,* 206 S.W.3d 639, 644–46 (Tex. Crim.App.2006); *Saldano v. State,* 70 S.W.3d 873, 889 n. 72 (Tex.Crim.App.2002); *Jasper v. State,* 61 S.W.3d 413, 421 (Tex. Crim.App.2001); *Aimufua v. State,* No. 10–00–223–CR, 2003 WL 22996901, at *4, 2003 Tex.App. LEXIS 10694, at *10 (Tex. App.-Waco Dec. 19, 2003, no pet.) (mem. op.) (not designated for publication).

First, Mason complains of the following italicized admonitions:

We trust your jury service will be educational and instructional to you, but more importantly I hope at the conclusion of your service that you'll find out why you're here, why it's important that you're here, and why it's necessary that you be here.

*I would just as soon do without you. I would just as soon make all the decisions myself if you'd just let me;* but you didn't want me to do that. You wanted to have—I've got a good volunteer right now. I've had people tell me that if I did have that authority, I would become insufferable so you might want to double think that.

Once people get that, they kind of change sometimes. So anyway you de-

cided you wanted to have the opportunity to have your decisions or your disputes settled by your fellow citizens. And the system won't work without the active participation of the citizenry. You decided you wanted to have the opportunity to do this.

And you need to look at it from this point of view. This time it's somebody else's problem. The next time it might be your problem. It might be your loved one's problem.

(Mason Br. at 9 (quoting 6 R.R. at 5–6) (italics added in Mason).) Mason argues:

Although the trial judge gave the venire good information, he also gave the venire additional information, and it is this additional information about which appellant is complaining. The trial judge told the venire that he was quite capable of handling this case and, inferentially, that involving the venire was a waste of the venire's time. The trial judge's subsequent comments effectively explain why a jury trial was a waste of everyone's time.

(Mason Br. at 9–10.) Fairly read, the trial judge's admonitions, perhaps in jest, concern the people's determination of the structure of the judicial system rather than Mason's election of a jury trial or the merits of Mason's case.

■ Next, Mason complains of the following italicized admonitions:

There's no magic formula to it. Over 90 percent of cases that are filed in these United States of America are settled. And they're settled in two manners. If they're a civil case they're usually settled by an agreement between the parties. Doesn't matter whether the judge approves it or not.

Criminal case, it's settled by an agreement between the parties with the approval of the Court. The Court has to approve the agreement. And like I said, over 90 percent of those cases are set-

tled. And they're not settled because we went back to the office and threw darts at a board and said where they're going to land.

It's because jurors have told us how they want particular cases under particular situations under certain circumstances settled. And we use that in determining similar cases that come up in the future how to determine them. *And most of the time nobody wants to beat their head on a wall.*

If they know enough information and they can determine how they think an Ellis County jury will settle a particular case under particular circumstances, then they can settle it. *On the other hand, the system's also designed if you want to beat your head on the wall, you can do that too.* It's your privilege.

An [sic] so if you have any—if either side—that is, on either side of the civil case or either side of a criminal case, the prosecution or defense, has a disagreement as to how an Ellis County jury would settle this case, then either side has the right to have a jury determine how it's going to be settled. And that's what we're going to be doing.

(Mason Br. at 10 (quoting 6 R.R. at 8–9) (italics added in Mason).) Mason argues:

Here the trial judge is telling the venire that one of the parties is being unreasonable. From experience, the trial judge already knew how the case would turn out. The trial judge attempts to qualify his statements so that they could be construed to apply to either party. In the context of his other comments, however, the venire would take his comments to be a reference to the defendant. The prosecutors would know precisely what an offense would be worth in Ellis County. The venire would be hard pressed to assume the prosecutor would not know how to evalu-

ate a case and hard pressed to assume the prosecutor would make an unreasonable settlement offer. The only person who might balk at a reasonable offer is the defendant, who would actually have to serve the time. In that context, the implicit reference is to the number of years a case is worth. That is, the question of guilt is a given, and the punishment is the item in controversy. These comments undermine the presumption of innocence.

(Mason Br. at 10–11.) The trial judge admonished the jury that the parties could not agree on the safe harbor of a plea to the court, and that one or both parties instead preferred to risk the uncertainties of trial. Fairly read, again, the admonitions do not signify that Mason's election of a jury trial is unreasonable.[1]

▮ Next, Mason complains of the following italicized admonitions:

Before you can convict somebody you'll have to find the evidence is sufficient to convince you and your other—11 other fellow jurors that somebody's guilty beyond a reasonable doubt.

How much proof is that? How much proof does it take to convince 12 jurors assembled at random from across the county that you proved your case—their evidence is sufficient to prove it by a preponderance of the evidence or on the other hand in a criminal case beyond a reasonable doubt.

*You tell us that. It's very subjective,* but I assure you that the judge and the attorneys get a feel of what it takes so you set those standards. Like I say, you're only here to judge the case that you're on, but your verdict becomes part of the information that's stored in our memory as to how similar cases of like nature under similar circumstances ought to be settled because you told us how you wanted them settled.

(Mason Br. at 11–12 (quoting 6 R.R. at 10–11) (emphasis added in Mason).) Mason argues:

The burden of proof is not subjective. The burden of proof is objective—it is beyond a reasonable doubt. If the juror retains a reasonable doubt, the State has not met its burden.

The weight and credibility determinations are subjective. That is where jurors have latitude and discretion.

The comments, however, had already done their damage because they removed one of the major lynchpins of a criminal proceeding—the burden of proof. The trial judge announced the burden of proof and then promptly told the venire it was a subjective standard, that is, that the jury could decide for itself what it meant.

---

1. Mason also complains of the following italicized admonitions:

The first basic thing [in] every criminal case every defendant is presumed to be innocent. *That doesn't mean that they are innocent.* What it means is they're presumed innocent, that the presumption of innocence standing alone in and of itself without any other information, just the presumption of innocence is sufficient to acquit a defendant unless the State meets its burden of proof and proves the defendant's [guilt] by the standard the law has set.

(Mason Br. at 11 (quoting 6 R.R. at 48) (bracketed alterations added by Mason) (em-phasis added in Mason).) Mason argues: "Once again, the trial judge gave the venire largely correct information, but he also gave additional information. This additional information emasculated the presumption of innocence." (Mason Br. at 11.) In this regard, Mason's issue is inadequately briefed. *See* Tex.R.App. P. 38.1(h); *Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 2982, 165 L.Ed.2d 989, 990 (2006); *Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App.2000); *Wyatt v. State,* 23 S.W.3d 18, 23 n. 5 (Tex. Crim.App.2000).

The trial judge also indicated both he and attorneys already knew how jurors in Ellis County applied the beyond-a-reasonable doubt standard. Tying this in with the trial judge's other comments, the trial judge was also saying he already knew how the case should turn out. As explained above, without specifying appellant specifically, the trial judge was nevertheless inferentially identifying appellant as being unreasonable by insisting upon a jury trial. The comments undermine the presumption of innocence.

(Mason Br. at 12 (citing 6 R.R. at 10–11).) However, "it is plain that prospective jurors may form their own definitions of proof beyond a reasonable doubt and they are not challengeable for cause based upon the type and amount of evidence they require to reach that level of confidence." *Murphy v. State,* 112 S.W.3d 592, 598 (Tex.Crim.App.2003); *accord Howard v. State,* 941 S.W.2d 102, 127 (Tex.Crim.App. 1996); *Garrett v. State,* 851 S.W.2d 853, 859 (Tex.Crim.App.1993). The trial judge's admonition that the jurors have considerable liberty in determining what quantum of evidence persuaded them beyond a reasonable doubt was not improper.

■ Lastly, Mason complains of the following italicized admonitions:

All right. And in criminal cases we have two phase trials, what they call bifurcated trials, guilt or innocence and punishment phase. And the first phase of the case which is guilt-innocence phase, the jury hears and is permitted to hear anything under the law, under the rules they're allowed to hear that is relevant to the issue of is the defendant guilty of the offense with which they're charged?

*You don't hear any evidence of whether a defendant has been arrested 100 times before or has never been arrested before in their life generally. You don't*

*hear that they've got a criminal record or they don't have a criminal record.*

Generally you don't hear that they have invented the cure for cancer or they go home and kick their dog and steal their grandmother's social security check and go out and buy dope with it.

*You don't hear that in the guilt or innocence phase generally because it's not relevant* to the issue of whether or not they committed the offense with which they're charged. So in the guilt-innocence phase of the case they're concentrating on that.

*Whether somebody's a good guy or a bad guy, you get to hear that later if we get that far.*

(Mason Br. at 13 (quoting 6 R.R. at 65–66) (emphasis added in Mason).) Mason argues:

A defendant is not concerned about the jury learning positive information about him. For that matter, the prosecutor too probably has little interest, one way or the other, regarding the jury's learning positive things about the defendant. Of particular interest to both the prosecutor and the defendant is the jury learning negative information about him, particularly during the trial on guilt or innocence. The trial judge can make reference to good information, but the comments that will stick with the venire are those indicating there may be additional bad information that the jurors will not be allowed to hear until the punishment phase.

(Mason Br. at 13.) Fairly read, again, the trial judge's admonitions do not effectively imply that evidence of Mason's bad character exists.

The trial judge's qualification of the venire panel did not vitiate the presumption of innocence. Mason failed to preserve a complaint for appellate review. We overrule Mason's issue.

Having overruled Mason's sole issue, we affirm.

Justice VANCE dissents.

BILL VANCE, Justice, dissenting.

I dissent because I believe the trial judge's comments to the jury panel vitiated the presumption of innocence.

## THE ISSUE

In a single issue and relying solely on *Blue v. State,* Mason says the trial judge destroyed the presumption of innocence when he admonished the jury panel. *Blue v. State,* 41 S.W.3d 129 (Tex.Crim.App. 2000). The State says that *Blue* is "not controlling precedent," so Mason waived his complaint, and that *Blue* is factually distinguishable from the case at hand.

The majority opinion reviews the statements Mason complains of, but inexplicably concludes that he has failed to preserve a complaint for review.

### Blue v. State

Although the State does not believe that *Blue* controls whether an objection was required to preserve the complaint in this case, the Court of Criminal Appeals opinion shows that only three judges dissented, with two concurring. *Id.* The preservation question was the focus of the case, but in finding "fundamental error" not requiring preservation, the majority found an error by the trial judge in imparting information to the venire that "vitiated the presumption of innocence." *Id.* at 132–33. Judge Mansfield joined the majority because he found the comments by the trial judge "so fundamentally prejudicial that appellant's right to a fair trial was denied." *Id.* at 133–35 (Mansfield, J., concurring). In concurring, Judge Keasler found that

the trial judge's statements were, when viewed objectively, so egregious as to render him biased and agreed that the error was both fundamental and structural. *Id.* at 135–39 (Keasler, J., concurring). Thus, six members of the court found the comments to be fundamentally erroneous.

## THE ADMONITIONS

Among the statements to the jury panel that Mason complains of are these: [1]

- I would just as soon do without you. I would just as soon make all the decisions myself if you'd just let me; but you didn't want to do that.

The majority opinion says that statement might have been made "in jest," but the record does not reflect that—it is simply speculation. The majority says the comments might be concerning the structure of the judicial system, but the record does not say that, and the statement, although ambiguous, conveys to me that the trial judge does not think that juries are desirable.

- And most of the time nobody wants to beat their head on a wall.

. . .

- On the other hand, the system's also designed if you want to beat your head on the wall, you can do that too. It's your privilege.[2]

This has no place in admonishments to a jury panel. The majority opinion says that these statements do not convey that Mason's choice of a jury trial is unreasonable. What, then, does it convey? These statements came after: "Over 90 percent of [criminal] cases are settled." Of course, criminal cases are "settled" by the defendant's pleading guilty. These statements, read objectively, could only have conveyed

---

1. The majority has quoted the statements in context, so for brevity I will not repeat them here in their entirety.

2. The analogy reflects a poor choice of words, given the fact of the alleged offense: multiple skull fractures of an infant.

to the jury that Mason was beating his head against a wall by not "settling" or pleading guilty. The record shows that Mason rejected a plea bargain of 60 years.[3]

- The first basic thing [in] every criminal case every defendant is presumed to be innocent. That doesn't mean that they are innocent.

The majority opinion buries this statement in a footnote, claiming inadequate briefing. As I have noted, Mason cites only *Blue.* Thus, this most damaging of the trial judge's statements is glossed over and not considered in the majority opinion.

*Blue* stands for the proposition that the judge's comments that taint the presumption of innocence are fundamental error. Given that holding and the single citation in this case, it is difficult to imagine that this part of a single issue is inadequately briefed. This statement, alone, is enough to taint the presumption of innocence when made by the trial judge.

- You tell us that. It's very subjective.

The majority opinion says this statement is not improper, citing cases considering challenges for cause. No juror had been questioned when this statement was made. The statement basically conveys the impression that the jury can determine for themselves—individually, as evidenced by the repeated references to "you," not under the law, what is meant by the burden of proof. Furthermore, the reference to other cases that "ought to be settled" is an improper reference.

- You don't hear any evidence of whether a defendant has been arrested 100 times before or has never been arrest-

ed before in their life generally. You don't hear that they've got a criminal record or they don't have a criminal record.... You don't hear that in the guilt or innocence phase generally because it's not relevant.... Whether somebody's a good guy or a bad guy, you get to hear that later if we get that far.

The majority opinion says that these comments do not *effectively* imply that evidence of Mason's bad character exists. What does "effectively" mean? That the trial judge intended to imply that such evidence exists and did not get that over to the panel? By dwelling on the subject of character evidence and a "criminal record," the trial judge conveyed to the jury panel that they would hear more about those subjects later.

### HARM?

In *Blue,* no harm analysis was performed before reversing the cause and remanding to the court of appeals. *Id.* at 133. Although a review like *Blue* appears to have a harm component built in, *i.e.,* how could a defendant receive a fair trial if the presumption of innocence has been destroyed, on remand the First Court of Appeals did a harm analysis, found that Blue had been harmed, and remanded the case to the trial court. *Blue v. State,* 64 S.W.3d 672, 672–73 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd) (op. on remand).

Finding a fundamental error of constitutional dimension, I cannot say beyond a reasonable doubt that the error did not contribute to Mason's conviction.[4]

3. *See Kniatt v. State,* 206 S.W.3d 657, 662 (Tex.Crim.App.2006) (trial court admitted in its findings of fact that it had "sanctioned" appellant, by revoking his bond, for his decisions to renege on the plea bargain and replace his counsel).

4. One of the *"Harris* factors" in assessing harm is the likelihood that the error will be

repeated with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). In that regard, see *Kniatt v. State,* 157 S.W.3d 83 (Tex.App.-Waco 2005), *rev'd,* 206 S.W.3d 657 (Tex.Crim.App.2006). On remand in *Kniatt,* we found that the comments by the same trial judge, although "plainly unlawful," did not require a finding of impartiality. *Kniatt v. State,* No. 10-03-00199-CR, 2007 WL

Tex.R.App. P. 42(a).

### CONCLUSION

I would find that the comments made to the jury panel in this case, in some ways more egregious than those in *Blue*, vitiated the presumption of innocence and harmed Mason. I would, therefore, reverse the judgment and remand the cause to the trial court for further proceedings. Because the majority does otherwise, I respectfully dissent.

1880475, at \*2 (Tex.App.-Waco June 27, 2007, no pet.) (op. on remand) (not designated for publication) (quoting *Kniatt v. State*, 206 S.W.3d 657, 659 & n. 1 (Tex.Crim.App.2006)).