Marcus Raynard **JOHNSON**, Appellant,

v.

**The STATE of Texas, Appellee.**

**No. 10–07–00224–CR.**

Court of Appeals of Texas, Waco.

May 28, 2008.

---

Mary Lou Shipley, Waxahachie, TX, for Appellant.

Joe F. Grubbs, Ellis County District Attorney, Waxahachie, TX, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

TOM GRAY, Chief Justice.

Marcus Johnson appeals his conviction for aggravated robbery. *See* TEX. PENAL CODE ANN. § 29.03(a) (Vernon 2003). We affirm.

**I. SUFFICIENCY OF THE EVIDENCE.** Johnson's first and fourth issues concern the factual sufficiency of the evidence.

**A. *Standard of Review.*** In Johnson's fourth issue, he contends, "The standard of review on factual insufficiency needs fur-

ther modification." (Br. at iii, viii, 47.) Johnson criticizes the Texas Court of Criminal Appeals' decision in *Watson v. Texas:*

> According to *Watson,* when attacking the factual insufficiency of the evidence, an appellant has to show on the record some objective basis for concluding the great weight and preponderance of the evidence contradicts the jury's verdict. The focus is not on whether the State met its burden of proving the defendant guilty beyond a reasonable doubt. Instead, the focus is on whether the appellant can show he is innocent by the great weight and preponderance of the evidence.

(Br. at 48 (citing *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim.App.2006)).) But Johnson concedes: "Appellate courts are bound to follow the decisions of the Court of Criminal Appeals of Texas. This Court cannot, therefore, grant [Johnson] the relief he seeks." (Br. at 47 (citing *Wiley v. State,* 112 S.W.3d 173, 175 (Tex. App.–Fort Worth 2003, pet. ref'd))); *see State v. Colyandro,* 233 S.W.3d 870, 870–71 (Tex.Crim.App.2007); *Resendez v. State,* 50 S.W.3d 84, 86 (Tex.App.–Waco 2001, pet. ref'd). We agree. We apply below the standard of review of the factual sufficiency of the evidence enunciated by the Court of Criminal Appeals, including in *Watson.*

We overrule Johnson's fourth issue.

**█ B. *Evidence of Identity.*** In Johnson's first issue, he contends that the evidence identifying Johnson as the robber was factually insufficient.

**█** "Evidence may be factually insufficient if: 1) it is so weak" that the verdict is "clearly wrong and manifestly unjust or 2) the adverse finding is against the great weight and preponderance of the available evidence," "considering conflict-

ing evidence." *Berry v. State,* 233 S.W.3d 847, 854 (Tex.Crim.App.2007) (quoting *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim.App.2000) (internal quotation marks omitted)); *see Watson,* 204 S.W.3d at 414–15; *see Rollerson v. State,* 227 S.W.3d 718, 724 (Tex.Crim.App.2007). "Such a factual sufficiency review requires the reviewing court to consider all of the evidence." *Berry* at 854 (citing *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006), *cert. denied,* —— U.S. ——, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007)); *accord Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). "[T]he evidence is reviewed in a neutral light rather than (as in a legal sufficiency review) in the light most favorable to the verdict." *Roberts v. State,* 220 S.W.3d 521, 524 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007); *accord Johnson,* 23 S.W.3d at 7; *Ladd v. State,* 3 S.W.3d 547, 557 (Tex. Crim.App.1999). The factual-sufficiency standard of review permits the reviewing court to substitute its judgment for that of the jury only "to a very limited degree." *Marshall,* 210 S.W.3d at 625 (quoting *Watson* at 415, 417). "[F]actual-sufficiency review requires [a] reviewing court to afford 'due deference' to a jury's determinations." *Id.* (quoting *Johnson* at 9). "A clearly wrong and unjust verdict occurs where the jury's finding is manifestly unjust, shocks the conscience, or clearly demonstrates bias." *Berry* at 854 (citing *Sells v. State,* 121 S.W.3d 748, 754 (Tex.Crim.App.2003)); *accord Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim.App.1997). A "requirement meant to assure that Texas' constitutional right to trial by jury remain 'inviolate[,]' TEX. CONST. art. I, § 15,] requires a direct-appeal court to exercise its factual-sufficiency jurisdiction with 'deferential standards of review' to jury verdicts." *Roberts v. State,* 221 S.W.3d 659, 664 n. 7 (Tex. Crim.App.2007) (quoting *Clewis* at 135). "Although an appellate court reviewing

factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur." *Roberts,* 220 S.W.3d at 524 (citing *Watson* at 417 & *Cain v. State,* 958 S.W.2d 404, 407, 410 (Tex.Crim.App.1997)). "[I]t is a jury, not a reviewing court, that accepts or rejects reasonably equal competing theories of" guilt. *See Goodman v. State,* 66 S.W.3d 283, 285 (Tex.Crim.App. 2001); *accord Abbott v. State,* 196 S.W.3d 334, 339 (Tex.App.–Waco 2006, pet. ref'd). "[A]n appellate court must first be able to say, with some objective basis in the record, that the *great weight and preponderance* of the ... evidence contradicts the jury's verdict before it is justified in" reversing for factually insufficient evidence. *Watson* at 417 (emphasis in orig.).

■■■■ "Direct and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007)); *see King v. State,* 29 S.W.3d 556, 565 (Tex.Crim.App.2000). "In a circumstantial-evidence case, it is unnecessary for every fact to point directly and independently to the guilt of the accused; rather, it is enough if the finding of guilt is warranted by the cumulative force of all the incriminating evidence." *Powell v. State,* 194 S.W.3d 503, 507 (Tex.Crim. App.2006); *see Castillo v. State,* 739 S.W.2d 280, 287 (Tex.Crim.App.1987).

■■■■ In criminal cases, the identity of the criminal actor is an "elemental fact." *Williams v. State,* 948 S.W.2d 954, 959 (Tex.App.–Waco 1997, pet. ref'd); *accord Page v. State,* 88 S.W.3d 755, 763 (Tex. App.–Corpus Christi 2002), *rev'd on other grounds,* 137 S.W.3d 75 (Tex.Crim.App. 2004); *see, e.g., Threadgill v. State,* 146 S.W.3d 654, 664 (Tex.Crim.App.2004); *O'Neal v. State,* 49 Tex.Crim. 297, 298, 92 S.W. 417, 417 (1906); *Kunde v. State,* 22 Tex.App. 65, 69, 3 S.W. 325, 331 (1886). "Evidence as to the identity of a" criminal "may be proven by direct or circumstantial evidence." *Oliver v. State,* 613 S.W.2d 270, 274 (Tex.Crim.App.1981) (op. on reh'g) (en banc); *accord Lockwood v. State,* 237 S.W.3d 428, 432 (Tex.App.–Waco 2007, no pet.) (quoting *Clark v. State,* 47 S.W.3d 211, 214 (Tex.App.–Beaumont 2001, no pet.)); *In re C.D.S.,* No. 10–07–00226–CV, 2008 WL 257238, *2, 2008 Tex.App. LEXIS 706, at *9 (Tex.App.–Waco Jan. 30, 2008, no pet.) (mem. op.) (juvenile adjudication).

The State points primarily to the following evidence. Billy Joe Mayo testified that one morning before daylight, he was awakened by a loud noise. Without putting on his glasses, Mayo went to investigate. Mayo found a stranger in his house. Mayo generally described the man by race, height, weight, and clothing, including "[a] scarf of some type" on his head. (3 R.R. at 32.) The stranger put a knife to Mayo's throat and demanded valuables. When Mayo said that he had none, the stranger ransacked Mayo's bedroom. Meanwhile, the stranger found a red bandana and covered his face with it. The stranger found and took Mayo's wallet and cellular telephone, and some jewelry. The robber told Mayo to wait twenty minutes before moving and left on foot. Mayo waited for about fifteen minutes, then called the police. Mayo had not been able to see the robber well enough to identify him. Ennis Police Department Officer Sid Lopez testified that he and other officers arrived at Mayo's house within two or three minutes of Mayo's call. Officer Lopez saw that Mayo's door had been kicked in. Officer

Jason York testified that he also responded. Officers Lopez and York began searching the neighborhood on foot. Officer York saw James Cox in his yard down the street from Mayo's house, and asked if Cox had seen anyone matching the description of the robber. Cox indicated the duplex across the street. Officer York waited there until Detective Sergeant John Erisman and other officers arrived. Sgt. Erisman testified that he knocked on the door and windows for several minutes before Bruente Williams answered and came outside. Williams told Sgt. Erisman that only she and Johnson were inside the apartment. When Williams started back inside, she found the door locked behind her. After several more minutes of knocking and calling, Johnson came to the door. Johnson was wearing blue jeans and a light-colored tank top, appeared hot and sweaty, and did not appear to have been sleeping. Johnson also had around his head an indentation of the sort caused by wearing a "do rag."[1] (3 R.R. at 109.) When officers searched Johnson's and Williams's bedroom, they found a do-rag thrown behind a cabinet, a red bandana and a knife on a table, and a pair of men's tennis shoes. The tread of the tennis shoes appeared consistent with the footprint left when Mayo's door was kicked in. At trial, Cox identified Johnson as the man he saw, and said that the man had been wearing blue jeans, a dark T-shirt, and a do-rag. The State also introduced evidence that after Johnson was arrested, he called Williams from jail and told her that he had not known that Cox would be outside, and directed Williams to give police an alibi statement to the effect that he had been in bed all night, and to get statements from Mayo and Cox recanting their statements to police. At trial, Williams testified that she would not have known if Johnson had gotten out of bed and left the apartment, since she had been sleeping. The State argues that Mayo's general description of the robber matched Johnson, and that Cox saw Johnson walking from the direction of Mayo's house within minutes of the robbery. When police officers contacted Johnson, he did not appear to have been sleeping. In Johnson's room, police found instruments of the crime, namely the do-rag, bandana, knife, and shoes. Williams's testimony conceded that she would not have known if Johnson had left. Johnson admitted that he was surprised by Cox and that he was the man Cox saw, but stated that Mayo could not identify him.

Johnson points to the testimony of his witness, James Jones. Jones testified that he had been walking in Cox's neighborhood the morning of the robbery, wearing blue jeans and a white T-shirt, and that he was of the same race as Johnson and similar in height and weight. Johnson argues that Cox saw Jones, not Johnson. Johnson also points to what he calls inconsistencies in the evidence. For example:

- Sgt. Erisman testified that he arrived at Johnson's apartment by 7:45 A.M., but Mayo testified that he did not call police until after 7:35.

- Sgt. Erisman testified that a police officer took Johnson to Mayo's house to see whether Mayo could identify Johnson, and Mayo was too frightened to attempt to do so; but Mayo testified that he did not remember the attempted identification.

- Cox testified that the man he saw was carrying three bottles of beer, but po-

---

1. A "do-rag" is "a kerchief worn esp[ecially] to cover the hair." MERRIAM-WEBSTER'S COLLE- GIATE DICTIONARY 373 (11th ed.2003).

lice officers testified that they found no beer in Johnson's apartment.

- Mayo testified that the robber was wearing jewelry or something around his neck, but Cox and police officers testified that they did not remember Johnson's wearing anything around his neck.

- Mayo testified that the knife the robber put to Mayo's throat had a serrated edge. Johnson argues that the knife found in Johnson's room is not serrated.[2]

Johnson also points to what he calls weaknesses in the evidence. For example:

- Johnson argues that Officer York could not have known what direction to go in searching for the robber based on Mayo's report.

- Johnson points to testimony that officers knocked on the door of Johnson's apartment for twenty minutes before Williams opened the door as an explanation why Johnson was dressed and alert when he came to the door.

- Johnson points to evidence that police officers did not find Mayo's wallet, telephone, or jewelry in Johnson's apartment.

- Johnson points to Mayo's testimony that a bandana left in Mayo's house may have been the one that the robber used, and thus not the one found in Johnson's apartment.

- Johnson points to Sgt. Erisman's testimony that do-rags are commonplace.

- Johnson points to evidence that he was cooperative with the police officers and did not attempt to flee.

- Johnson points to the absence of certain evidence, such as evidence of Johnson's shoe size and fingerprint evidence.

Viewing the evidence in a neutral light, and giving due deference to the jury's determinations of witness credibility and the weight of the evidence, we hold that the identity evidence was not so weak that the verdict was clearly wrong and manifestly unjust, and that the identity finding was not against the great weight and preponderance of the evidence. The evidence of identity was factually sufficient.

We overrule Johnson's first issue.

**II. ADMONITIONS.** In Johnson's second issue, he contends that the trial court erred in its admonitions to the venire panel.

 Texas Rule of Appellate Procedure 33.1 generally provides:

> As a prerequisite to presenting a complaint for appellate review, the record must show that:
>
> (1) the complaint was made to the trial court by a timely request, objection, or motion . . . and
>
> (2) the trial court . . . ruled on the request, objection, or motion. . . .

TEX.R.APP. P. 33.1(a). "The only essential requirement to ensure preservation is a specific, timely request that is refused by the trial court." *Cruz v. State,* 225 S.W.3d 546, 548 (Tex.Crim.App.2007); *accord Young v. State,* 137 S.W.3d 65, 69 (Tex. Crim.App.2004). Rule 33.1 is a " 'judge-protecting' rule[ ] of error preservation." *Reyna v. State,* 168 S.W.3d 173, 177 (Tex. Crim.App.2005) (quoting *Martinez v. State,* 91 S.W.3d 331, 335 (Tex.Crim.App. 2002)). "[T]he party complaining on appeal . . . about a trial court's" ruling "must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the . . . rule or statute in question and its precise and proper application to the" matter "in question." *Id.*

---

**2.** The knife is plainly serrated.

(quoting *Martinez,* 91 S.W.3d at 335–36) (alterations added). "Except for complaints involving systemic (or absolute) requirements, or rights that are waivable only[,] ... all other complaints, whether constitutional, statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." *Neal v. State,* 150 S.W.3d 169, 175 (Tex.Crim.App.2004) (quoting *Mendez v. State,* 138 S.W.3d 334, 342 (Tex.Crim.App.2004)) (bracketed alteration added); *see Cameron v. State,* 241 S.W.3d 15, 22 (Tex.Crim.App.2007); *Amador v. State,* 221 S.W.3d 666, 671 n. 9 (Tex.Crim.App.2007); *Marin v. State,* 851 S.W.2d 275, 279–80 (Tex.Crim.App.1993).

Johnson failed to object to the admonitions at trial. Johnson argues that "the comments tainted the presumption of innocence and violated [Johnson]'s right to an impartial judge and were, therefore, fundamental error, of constitutional dimension, and required no objection." (Br. at 31 (citing *Blue v. State,* 41 S.W.3d 129, 132 (Tex.Crim.App.2000) (plurality op))).

■■■ "Many ... admonitory or cautionary instructions are customarily used by criminal trial judges at the time of the voir dire examination of the jury panel and at various intervals of a trial to guard against jury misconduct. The giving of such instructions is largely within the discretion of the court...." *Walker v. State,* 440 S.W.2d 653, 658 (Tex.Crim.App.1969) (internal citation omitted); *see Hernandez v. State,* 169 Tex.Crim. 418, 421, 334 S.W.2d 299, 301–302 (1960); *see generally Green v. State,* 934 S.W.2d 92, 106 (Tex.Crim.App.1996); *Etheridge v. State,* 903 S.W.2d 1, 9 (Tex.Crim.App.1994); *Nunfio v. State,* 808 S.W.2d 482, 484 (Tex.Crim.App.1991).

**3.** Johnson also notes the following similar admonition:

We consider in turn the trial court's admonitions concerning which Johnson now complains. Johnson misconstrues those admonitions.

■■■ **A. "[M]ost people don't want to beat their head on a wall."** First, Johnson complains of the following italicized admonitions:

It's no international secret or national secret that all—most cases, I would say 90 to 95 percent of all cases that are filed in the courts of these United States are settled.

If it's a civil case, it's settled by agreement between the parties. It's just agree to settle it and go away. The criminal cases are decided because the prosecution and the defense determine what the proper outcome would be based on what an Ellis County jury would probably do in the case. And that has to be approved by the Court. And that's the way those cases are settled.

And it's not—and they don't come to that conclusion, those three groups don't come to that conclusion by going in the Judge's office and throwing darts at a board. They reached it by what jurors have told us how they want particular cases and particular situations under certain circumstances settled. And you can pretty much hit it pretty close.

*And most people don't want to beat their head on a wall. But the system is designed that if you want to beat your head on the wall, anybody that wants to beat their head on the wall, they're allowed to do so because that's the privilege they have is having a jury decide the case for them.*

(Br. at 33 (quoting 2 R.R. at 13) (emphasis added by Johnson).) [3]

Johnson argues:

Juries tell us how they want cases settled. And the parties who are involved in the case try to settle them along those lines.

Appellant contends any time the trial court suggest[s] to the venire that a trial would be a waste of everyone's time in a criminal case, the trial court is telling the jury the defendant is the party banging his head against the wall. . . . This violates the presumption of innocence because the trial court indicates to the jury the defendant is guilty, and it violates appellant's right to an impartial trial court, because the trial court is expressing antagonism toward the defendant's decision to fight the prosecution.

(Br. at 33–34.) The admonition being fairly read, the trial judge admonished the panel that the parties could not agree on the safe harbor of a plea to the court, and that one or both parties instead preferred to risk the uncertainties of trial; the admonition cannot reasonably be understood to signify that the trial judge was indicating his judgment of the case or that he was not impartial. *See Mason v. State,* 237 S.W.3d 800, 804 (Tex.App.–Waco 2007, pet. ref'd).

 **B.** *The presumption of defendants' innocence "doesn't mean they are innocent."* Next, Johnson complains of the following italicized admonitions:

In every criminal case, a defendant is presumed to be innocent. *That doesn't mean they are innocent.* What it means is the presumption of innocence standing alone is sufficient to acquit a defendant unless the prosecution meets its burden of proof and proves the defendant guilty by the standard provided by law. That's what presumption of innocence means.

It's another way of saying nobody has to prove they're not guilty. That's the

one clich[e] you hear around and I think it's going to apply, or certainly apply, in criminal trials in the State of Texas is that you[ ] are innocent until proven guilty.

So the presumption of innocence means that you are innocent until proven guilty unless there's sufficient evidence to convince you beyond a reasonable doubt that a defendant is guilty.

(Br. at 34–35 (quoting 2 R.R. at 48) (emphasis added by Johnson) (bracketed alterations added).)

Johnson argues: "The trial court said that defendants are presumed innocent but are not necessarily innocent. This gutted the presumption of innocence. The correct articulation is that the defendant is presumed innocent and remains innocent until proven guilty beyond a reasonable doubt." (Br. at 35.)

 The Texas Rules of Appellate Procedure require that in order to preserve error on appeal an appellant's "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP. P. 38.1(h). Where the "appellant points us to nothing in the record, makes no argument, and cites no authority to support [ ]his proposition," "[w]e will not make [the] appellant's arguments for him[,] and [will] hold the allegation to be inadequately briefed." *Wyatt v. State,* 23 S.W.3d 18, 23 n. 5 (Tex.Crim.App.2000); *see Gallo v. State,* 239 S.W.3d 757, 768 (Tex.Crim.App.2007); *Garcia v. State,* 887 S.W.2d 862, 882 (Tex.Crim.App.1994). Inadequately briefed issues "present nothing for review." *Saldano v. State,* 232 S.W.3d 77, 107 (Tex.Crim.App.2007), *cert. de-*

---

And if any of those parties don't agree as to that's how an Ellis County jury would settle it, then any of those parties have a right to request that a jury be called to

decide those cases. So that's, basically, the way those happen.

(Br. at 34 (quoting 2 R.R. at 16).)

*nied,* —— U.S. ——, 128 S.Ct. 1446, 170 L.Ed.2d 278 (2008); *see* Tex.R.App. P. 33.1(a); *McCarthy v. State,* 65 S.W.3d 47, 49 n. 2 (Tex.Crim.App.2001); *Penry v. State,* 903 S.W.2d 715, 727 (Tex.Crim.App. 1995). Inadequately briefed issues should be overruled. *See Tong v. State,* 25 S.W.3d 707, 710 (Tex.Crim.App.2000) (op. on orig. submission); *Russeau v. State,* 171 S.W.3d 871, 881 (Tex.Crim.App.2005), *cert. denied,* 548 U.S. 926, 126 S.Ct. 2982, 165 L.Ed.2d 989 (2006); *DeBlanc v. State,* 799 S.W.2d 701, 705 (Tex.Crim.App.1990).

We assume without deciding that Johnson adequately briefs his issue.

■■■■ "[A]ll persons are presumed innocent and no person may be convicted of an offense unless each element is proved beyond a reasonable doubt." Tex. Penal Code Ann. § 2.01 (Vernon 2003). "The presumption of innocence that surrounds every accused person means an assumption which prevails as the judgment of the law until the contrary is proven." *Cloud v. State,* 150 Tex.Crim. 458, 461, 202 S.W.2d 846, 848 (1947) (op. on reh'g); *accord Will v. State,* 794 S.W.2d 948, 950 (Tex.App.–Houston [1st Dist.] 1990, pet. ref'd); *Rideau v. State,* 751 S.W.2d 248, 250 (Tex. App.–Beaumont 1988, no pet.). "[T]he presumption of innocence does not carry with it the connotation that a defendant is in fact innocent." *Zimmerman v. State,* 860 S.W.2d 89, 97 (Tex.Crim.App.1993); *accord Will* at 950; *Rideau* at 250. "The so-called presumption of innocence is not an inference" in the usual sense; "rather, it is an assignment of a burden of proof prior to trial based on the substantive law requiring the State to prove guilt beyond a reasonable doubt.... [I]t is a 'short-hand' substitute for substantive criminal law." *Madrid v. State,* 595 S.W.2d 106, 110 (Tex. Crim.App. [Panel Op.] 1979) (op. on orig. submission); *see Rideau* at 250.

Johnson does not establish that the trial court's admonition did not correctly state the law, or that the admonition "gutted" a properly understood presumption of innocence.

■■■ C. *Reasonable doubt is "what it means to you."* Next, Johnson complains of the following italicized admonitions:

But the burden of proof in every criminal case is on the State. They have the burden of proof. The defendant doesn't have—I already explained to you, they don't—the defendant doesn't have any burden to prove anything. And that burden is ... beyond a reasonable doubt.

That's the standard that you're going to use to determine whether or not a defendant committed the offense, was evidence sufficient to convince you that the defendant committed the offense beyond a reasonable doubt.

Those words will not be defined for you. They won't get any further breakdown. It's been toyed with by the legislature in courts in the past and they eventually always come to the same conclusion beyond a reasonable doubt are words of common meaning and easily understood by anybody who speaks the English language.

So the attorneys will not be able to tell you, just like I will not be able to tell you, what beyond a reasonable doubt is. *It's what it means to you.* But that's the standard that you have to use. So everybody can get up here and tell you what it's not, as long as they don't tell you what it is.

And I can tell you that beyond a reasonable doubt does not mean beyond all doubt, doesn't mean beyond any doubt, doesn't mean beyond a hundred percent, doesn't mean [to] a[n] absolute certainty. It doesn't mean any—beyond

a shadow of a doubt. Doesn't mean any of those things. Nor does ... it mean probably, more likely than not. It sure looks that way. If I was guessing, I would guess this way. It's probably that way. It's none of those things either.

The term you use to determine it is beyond a reasonable doubt, and those words have no further legal definition.

(Br. at 35–36 (quoting 2 R.R. at 51–53) (emphasis and second bracketed material added by Johnson) (ellipses added).)

Johnson argues that the trial court's admonition invited the panelists "to redefine the standard" of proof subjectively. (Br. at 36, 37.) Johnson argues:

[W]hat *Murphy* [*v. State*, 112 S.W.3d 592 (Tex.Crim.App.2003)], *Howard* [*v. State*, 941 S.W.2d 102 (Tex.Crim.App. 1996) (op. on reh'g)], and *Garrett* [*v. State*, 851 S.W.2d 853 (Tex.Crim.App. 1993),] are saying is jurors determine whether the evidence meets proof beyond a reasonable doubt, which depends on their subjective analysis of the weight of the evidence and credibility of the witnesses. Appellant contends *Murphy, Howard,* and *Garrett* do not give jurors the freedom to redefine the standard. (Br. at 37.)

▮▮▮▮ "[T]he better practice is to give no definition of reasonable doubt at all to the jury." *Woods v. State*, 152 S.W.3d 105, 115 (Tex.Crim.App.2004) (quoting *Paulson v. State*, 28 S.W.3d 570, 573 (Tex. Crim.App.2000)). Voir-dire examination may not "suggest to" a venire member "that he could require a different quantum of proof," other than that beyond a reasonable doubt, "depending on the nature of the case." *Goff v. State*, 931 S.W.2d 537, 550 (Tex.Crim.App.1996) (plurality op.). But each juror may properly form "his personal threshold of reasonable doubt," that is, "the type and amount of evidence" a juror would "require to reach th[e] level of confidence" of beyond a reasonable doubt. *Murphy* at 598 (quoting *Howard* at 129); *see Mason*, 237 S.W.3d at 805.

Fairly read, again, the trial judge's admonition correctly stated that he could not state concretely the evidence necessary to prove Johnson guilty beyond a reasonable doubt; it did not invite the panelists to redefine the standard of proof beyond a reasonable doubt. Johnson concedes, "Reasonable doubt needs no amplification and has a commonly-accepted meaning." (Br. at 37 (citing *Paulson*, 28 S.W.3d at 570).) Johnson correctly states that what he calls jurors' permissible "subjectivity lies in what evidence[ ] meets proof beyond a reasonable doubt." (Br. at 38); *see Murphy* at 598; *Howard* at 127; *Garrett* at 859. Johnson does not establish that the trial court's admonition did not correctly state the law, or that the admonition invited the panelists to redefine the standard of proof.

▮▮▮ **D. *Extraneous–Act Evidence.*** Lastly, Johnson complains concerning the following admonitions:

[I]n the first phase of the case, all you're going to hear is whether a defendant committed the offense—the facts and circumstances, if there are any to support it, of whether or not the defendant committed the offense that's charged against him.

You won't hear in the punishment phase—I mean, excuse me, you won't hear in the guilt or innocence phase whether a defendant is a good person or ... bad person. You won't hear a defendant ha[s]—in all likelihood, you won't hear whether a defendant has a criminal record or does not have a criminal record.

You won't have—you won't have—you won't hear the punishment—in the guilt

or innocence phase whether the defendant has committed other bad acts in the past or has not committed other bad acts in the past, nor will you probably hear whether a defendant has committed good acts in the past or bad accounts [i]n the past. Or not committed—or not performed good acts in the past.

In other words, whether or not a ... defendant has created or invented the cure for cancer or whether a defendant steals great-grandma's Social Security check so the defendant can buy dope is of no relevance to the guilt or innocence phase of the case.

Because the jury is to determine, or the Court, if it was trying the case, to determine only whether or not the defendant committed the offense that's charged against them. And whether they're a good person or whether they're a bad person or whether they're a good old boy or a bad old boy doesn't matter [any] at all as to whether or not the defendant committed the offense that's charged against him.

In the second phase of the case, if you find the defendant guilty, all those things are relevant regarding punishment.

(Br. at 40–41 (quoting 2 R.R. at 69–70) (first bracketed alteration by Johnson) (ellipses added).)

Johnson argues:

At punishment, the jury will hear whatever the judge deems relevant to assessing a proper punishment. This was all the trial court needed to say. Instead, the trial judge planted the seed in the prospective jurors' heads that there may be a great deal about the defendant they would not hear until the punishment phase.

(Br. at 41 (internal citation omitted).)

Fairly read, again, the trial judge's admonition does not effectively imply that evidence of extraneous bad acts committed by Johnson exists.

CONCLUSION. Johnson does not show that the trial court's admonitions vitiated the presumption of innocence, or that the trial court abused its discretion in its admonitions. Johnson forfeits his complaint. We overrule Johnson's second issue.

 **III. ADMISSIBILITY OF EVIDENCE.** In Johnson's third issue, he contends that the trial court erred in overruling Johnson's objections to evidence.

 "An appellate court may not disturb a trial court's evidentiary ruling absent an abuse of discretion." *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim.App.2007); *accord Cameron*, 241 S.W.3d at 19; *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1991) (op. on reh'g). "In other words, as long as the trial court's decision was within the zone of reasonable disagreement and was correct under any theory of law applicable to the case, it must be upheld." *Winegarner* at 790; *accord Casey v. State*, 215 S.W.3d 870, 879 (Tex.Crim.App.2007); Montgomery at 391 (op. on reh'g).

 Evidence is probative if it has "any tendency to make the existence of any fact ... more probable or less probable than it would be without the evidence." TEX.R. EVID. 401; *see Miller v. State*, 36 S.W.3d 503, 507 (Tex.Crim.App.2001). "Evidence need not by itself prove or disprove a particular fact ...; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact...." *Stewart v. State*, 129 S.W.3d 93, 96 (Tex.Crim.App.2004); *accord Mendiola v. State*, 21 S.W.3d 282, 284 (Tex.Crim. App.2000); *Montgomery*, 810 S.W.2d at 376 (1990) (op. on orig. submission).

Johnson complains of the admission of evidence of a recording of a telephone call

that he placed to Williams from jail. In the conversation, he sought for Williams to sign a tearful statement establishing an alibi for him, and to cause Mayo and Cox to sign statements recanting their statements to police officers. The State offered the evidence for purposes of "impeachment." (3 R.R. at 143.)

**A. *Ground of Admissibility.*** Johnson argues that the evidence constituted improper impeachment under Texas Rules of Evidence 608 and 613, and that the evidence was not admissible as a hearsay exception under Rule 803(24). *See* Tex.R. Evid. 608, 613, 803(24). We agree that those rules do not govern Johnson's case. We nonetheless hold that the evidence was admissible for purposes of impeachment and as substantive evidence of Johnson's guilt.

The State offered evidence of a telephone call that Johnson placed from jail two days after his arrest, in the form of a recording of the call. The State argued, "The defendant calls [Williams] and tells her to go—very specifically to go over to Mr. James' house and—first of all, for her to prepare a statement and he describes for her how to prepare the statement, generally what to say in the statement. Take that statement to Mr. James and get him to sign it. And then take it to a notary."[4] (3 R.R. at 147 (bracketed alterations added).) In the recording, Johnson and Williams conversed, in relevant part, as follows:

MARCUS JOHNSON: Hey, baby. What you doing? I miss you.

BRUENTE WILLIAMS: I miss you.

MARCUS JOHNSON: Huh?

BRUENTE WILLIAMS: I miss you.

MARCUS JOHNSON: Yeah. So what's been going on?

BRUENTE WILLIAMS: Nothing.

MARCUS JOHNSON: Nothing.

BRUENTE WILLIAMS: I was worried about you today. Why didn't you tell me that you had to go to court at 9:00?

MARCUS JOHNSON: I didn't say that.

BRUENTE WILLIAMS: You did say. You and your mom told me that.

MARCUS JOHNSON: (Inaudible) court all day, Baby. I ain't got no lawyer. They got a 180 days before they indict me.

BRUENTE WILLIAMS: What?

MARCUS JOHNSON: I can sit here 180 days before they got to indict me.

BRUENTE WILLIAMS: You could have left that piece of information out.

MARCUS JOHNSON: Huh?

BRUENTE WILLIAMS: You could have left that piece of information out.

MARCUS JOHNSON: What's that?

BRUENTE WILLIAMS: That 180 days.

MARCUS JOHNSON: (Inaudible) that's why I'm trying to get everything took care of now. See what I'm saying. Just let me—let me break it down to you so you understand. Hold on. All right. By you going and having Mr. James sign that statement, right?

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: See, I didn't even know Mr. James was out there. You know what I'm saying? Like you can pretty much write it up yourself. You know what I'm saying. Make it legible, you know, like in print saying

---

4. The parties sometimes refer to James Cox as "Mr. James." (*E.g.,* 3 R.R. at 94, 95, 147, 164.)

that I, you know what I'm saying, so and so, so and so, hereby, you know what I'm saying, state that I was on the porch. I was at the house, (inaudible) at his house, you know what I'm saying, and had a clear view of y'all's house, you know what I'm saying, and did not see, you know what I'm saying, so and so Marcus Johnson come through there. I did—I do know him, have known him or whatever. You know what I'm saying.

Make it where they can't say, well, it may be—he could have made a mistake. You know what I'm saying?

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: But make it where like it's him saying something that he might have—that he saying somebody's over there but he know that it wasn't me. You know what I'm saying?

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: And then I say (Inaudible) talking to that old man, right, the one that supposed to got robbed.

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: And like say he's going to talk (inaudible) to let him know like people them saying, like, hey, you know, know what I'm saying, that's my—that's my husband, whatever, he's been staying out there for the long—longer than y'all or whatever. Ain't nothing like this ever happened. He wouldn't do nothing like this. You know what I'm saying. Mistaken identity.

If you make it—you know what I'm saying, because the officer told me that he said he couldn't identify me, you know what I'm saying. And once he signs a statement saying—all you got to do is write up (inaudible) saying, you know, we just trying to keep—I'm trying to keep my husband from being, you know what I'm saying, convicted from

something he didn't do or whatever. You know what I'm a saying.

And tell him that y'all automatically signed statement, you know what I'm saying, saying that—you know what I'm saying, you tell the police when they brought my husband in front of you that you could not identify him as the person that robbed you. That way once, see, you do all that, Baby, do that now because (inaudible) Erisman the one trying to push the case.

BRUENTE WILLIAMS: (Inaudible.)

MARCUS JOHNSON: (Inaudible.) You know what I'm saying, you got to beat him to the punch because when they talk to him they going to tell him don't talk to y'all. Don't do nothing (inaudible). He's going to tell them all that. Don't talk to y'all, don't try to (inaudible). He's trying to get the man to sign a statement saying that it might have been me or they (inaudible) put my picture in front of the man's face. You know what I'm saying.

And they put my pictures in front of their face. Of course they going to know who I am then. But if y'all go right then, (inaudible) before y'all do anything else get him to sign a statement.

Then when I get my lawyer or whatever, right, when my lawyer get them papers it won't even take no 180 days. Because you cannot indict me if the man that got robbed saying he couldn't identify me as the man, then the man that got robbed that morning could not know he was out there saying that he could say that it wasn't me what kind of case they got.

Then you sign a statement saying that I was in bed with you, whatever, you a separate witness, you know what I'm saying.

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: By you not having no enemies or whatever, you know what I'm saying, you sign a statement that I Bruente, woo woo, you know what I'm saying, woo. You know what I'm saying, testify that my husband, you know what I'm saying?

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: But all that's got to be done immediately, you know what I'm saying.

BRUENTE WILLIAMS: Yeah.

MARCUS JOHNSON: But if I (inaudible). You pretty much all I've been talking about, my wife, my wife. My wife. I miss my wife for real.

( [sic] 3 R.R. at 163–68.)

The trial court found and ruled:

The Court finds that it's admissible on the issue of the knowledge of the defendant as to ... the offense it question. It could be deduced as an admission or it's possible to be deduced by the fact finder as an admission.

It's admissible as corroboration of the witness Cox....

.... So, therefore, the objection's— and even under the balancing test I find the probative value does not—is not outweighed by the prejudicial effect. Overrule the objection.

(3 R.R. at 155–56; *see id.* at 160, 161.)

1. *Admission Against Interest.* Johnson argues, first, that the evidence was not admissible as an admission against interest.

The Rules of Evidence's hearsay rule provides, "Hearsay is not admissible except as provided by statute or these rules or by other rules promulgated pursuant to statutory authority." Tex.R. Evid. 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* 801(d). But "not excluded by the hearsay rule" is a statement against interest, that is:

[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in [the] declarant's position would not have made the statement unless believing it to be true.

*Id.* 803, (24). Rule 801 provides, however, "A statement is not hearsay if" the statement is an "[a]dmission by a party-opponent," such as when "[t]he statement is offered against a party and is ... the party's own statement...." *Id.* 801(e), (2), (A). "... Rule 801(e)(2)(A) plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay."[5] *Trevino v. State*, 991 S.W.2d 849, 853 (Tex.Crim. App.1999); *accord Moreno v. State*, Nos. 13–03–649–CR & 13–03–650–CR, 2005 WL 1413491, *3, 2005 Tex.App. LEXIS 4091, at *8 (Tex.App.–Corpus Christi May 26, 2005, pet. ref'd) (not designated for publication)

---

**5.** Other matters, such as voluntariness, are relevant to the admissibility of a criminal defendant's post-arrest statements as party-opponent statements. *See, e.g.,* U.S. Const. amend. V; *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); Tex. Const. Art. I, § 10; Tex.Code Crim. Proc. Ann. art. 38.22, § 5 (Vernon 2005); *Berry,* 233 S.W.3d at 855; *Ochoa v. State,* 573 S.W.2d 796, 799–800 (Tex.Crim.App.1978); *Kimball v. State,* 24 S.W.3d 555, 563 (Tex.App.–Waco 2000, no pet.). Johnson does not raise those matters.

(mem. op.); *see Bone v. State*, 77 S.W.3d 828, 835 & n. 25 (Tex.Crim.App.2002).

The evidence of which Johnson complains consisted of his own statement. Johnson's statement did not constitute hearsay, so Rule 803(24) does not govern the statement's admissibility. By the same token, Johnson's admissions are not barred by the hearsay rule.

2. *Impeachment.* Next, Johnson argues that the evidence did not constitute proper impeachment evidence. The trial court would not have abused its discretion in overruling that objection.

2. a. Impeachment by Evidence of Untruthful Character. First, Johnson argues under Rule of Evidence 608(b).[6] *See* TEX.R. EVID. 608(b). Rule 608 governs impeachment of a witness's character for truthfulness. *See* TEX.R. EVID. 608; *Dixon v. State*, 2 S.W.3d 263, 271 (Tex.Crim.App. 1998) (op. on reh'g); *Cervantes v. State*, No. 10–05–00096–CR, 2006 WL 1029711, *2–3, 2006 Tex.App. LEXIS 3164, at *4–5 (Tex.App.–Waco April 19, 2006, no pet.) (not designated for publication); 1 STEVEN GOODE, OLIN GUY WELLBORN III, & M. MICHAEL SHARLOT, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE § 608.1, at

718 (3d ed.2002). Rule 608(b) provides: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence." TEX.R. EVID. 608(b); *see id.* 609.

Johnson's argument is as follows:

Other than by conviction for a crime, a witness's character for truthfulness may not be impeached by proof of a specific instance of conduct. TEX.R. EVID. 608(b). *Gonzales* [*v. State* ], 929 S.W.2d[546,] 549 [ (Tex.App.–Austin 1996, pet. ref'd) ]. Rule 608(b) is very restrictive and allows for no exceptions. *Gonzales*, 929 S.W.2d at 549. Rule 609 sets out how convictions can be used to impeach. TEX.R. EVID. 609.

(Br. at 45); *see* TEX.R. EVID. 608–609. We assume without deciding that Johnson preserved his complaint in the trial court.[7] Even on appeal, however, we do not readily discern Johnson's complaint under Rule 608. Johnson's argument under Rule 608 is inadequately briefed.[8]

---

**6.** Johnson concedes that his trial objection was in terms of Rule of Evidence 609, which governs impeachment by prior conviction. *See* TEX.R. EVID. 609. Johnson, however, argues:

It is axiomatic that where the correct ground of exclusion was obvious to the trial judge and opposing party, no waiver results from a general or imprecise objection. Although appellant did not specifically refer to rule 608, appellant did refer to rule 609, and contextually the court and State would have understood that was the basis of his objection.

(Br. at 45 (citing *Zillender v. State*, 557 S.W.2d 515, 517 (Tex.Crim.App.1977))); *cf.* TEX.R.APP. P. 33.1(a)(1)(A); *Bennett v. State*, 235 S.W.3d 241, 243 (Tex.Crim.App.2007). We assume without deciding that Johnson's trial objection preserved his complaint for

appellate review and that Johnson's issue on appeal comports with his objection.

**7.** At trial, Johnson objected, "Rule 608—I'm sorry, 609 I believe is—there's just not proper—that's just not proper impeachment of a witness. The only—the only impeachment of a witness for purpose of attacking credibility of a witness the only thing they can use is conviction of a crime." ( [sic] 3 R.R. at 144; *see id.* at 155.)

**8.** We do not, in any case, perceive that the State offered the evidence to impeach a witness's character for truthfulness. Character "means 'a generalized description of a person's disposition, or of the disposition in respect to a general trait, such as honesty . . . .' " *Wheeler v. State*, 67 S.W.3d 879, 882 n. 2 (Tex.Crim.App.2002) (quoting CHARLES MCCORMICK, EVIDENCE § 195 (4th ed.1992)); *accord* 1 GOODE ET AL. § 404.2, at 179–80 (3d ed.).

2. b. Impeachment by Evidence of Bias. Johnson next appears to complain under Rule of Evidence 613.[9] Johnson argues:

> Appellant contends the evidence was not admissible under rule 612 of the Texas Rules of Evidence. Under rule 612, there is a right to impeach a witness by proof of circumstances or statements showing bias or interest on the part of the witness. TEX.R. EVID. 612(b); *Gonzales*, 929 S.W.2d at 549. Rule 612 places no limits on the sort of evidence that a party may adduce to show a witness's bias or interest. *Gonzales*, 929 S.W.2d at 549. The impeaching party must show that the witness's attitude is such that he is likely to favor or disfavor a particular litigant's positions for reasons unrelated to the merits of the suit. *Gonzales*, 929 S.W.2d at 549.

(Br. at 45.)

Rule 613(b) governs impeachment by evidence of bias. *Bee v. State*, 974 S.W.2d 184, 189 (Tex.App.–San Antonio 1998, no pet.); 1 GOODE ET AL. § 613.1 (3d ed.); *id.* § 613.6, at 810. The rule permits "impeaching a witness by proof of circumstances or statements showing bias or interest on the part of such witness." TEX.R. EVID. 613(b).

Johnson argues:

> The tape recording showed appellant wanted Williams to get a statement from Cox that Cox was mistaken. Williams got a statement from Cox in which Cox maintained he saw appellant. Appellant was not a witness, so the tape recording could not be used to show his bias or interest. Both Cox and Williams were witnesses, but the tape recording does not show how either had a bias or interest. Williams was appellant's girlfriend and appellant sometimes referred to her as his wife, but that was not a contested issue—it was not an issue upon which Williams needed impeaching. (III RR 81.) Rule 612 was not a basis for admitting the tape recording.

(Br. at 45–46.)

▮▮▮▮ We do not perceive that the State sought to admit the evidence as evidence of the bias of a witness. The evidence is, nonetheless, probative of Williams's bias in favor of Johnson.[10] Under Rule 613(b), "[p]arties are allowed great latitude to show 'any fact which would or might tend to establish ill feeling, bias, motive and animus on the part of the witness.'" *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex.Crim.App.1998) (quoting *London v. State*, 739 S.W.2d 842, 846 (Tex.Crim.App.1987)) (alteration added); *see Smith v. State*, 236 S.W.3d 282, 292 (Tex.App.–Houston [1st Dist.] 2007, pet. ref'd). "The rule encompasses *all facts and circumstances, which when tested by human experience, tend to show that a witness may shade his testimony* for the purpose of helping to establish one side of the cause only." *Carroll v. State*, 916 S.W.2d 494, 497–98 (Tex.Crim.App.1996) (emphasis in orig.); *accord Smith* at 292. Among such facts and circumstances is the witness's familial or personal relationship with a party. *E.g., Hanner v. State*, 572 S.W.2d 702, 707 n. 4 (Tex.Crim.App.1978) (en banc); *Vaughn v. State*, 888 S.W.2d 62,

---

9. Johnson refers to Rule 612(b), which governs the use of writings to refresh memory. *See* TEX.R. EVID. 612(b). We understand Johnson, citing *Gonzales v. State*, to refer to Rule of Evidence 613(b), the successor to Texas Rule of Criminal Evidence 612(b). *See Gonzales*, 929 S.W.2d at 549 (interpreting TEX. R.CRIM. EVID. 612(b), 49 TEX. B.J. 220, 228 (1986) (repealed 1998) (current version at TEX.R. EVID. 613(b))).

10. At trial, Johnson's counsel conceded that the evidence "could only go really to [Williams's] credibility." (3 R.R. at 146.)

74–75 (Tex.App.–Houston [1st Dist.] 1994), *aff'd,* 931 S.W.2d 564 (Tex.Crim.App.1996); *see* 1 GOODE ET AL. § 613.6, at 815–16 (3d ed.).

Here, the evidence of which Johnson complains shows the familial or quasi-familial relationship between Johnson and Williams. In that evidence, they show affection and concern for each other. The evidence tended to prove a ground of bias on Williams's part in favor of Johnson. Johnson does not show that the trial court abused its discretion in overruling Johnson's objection under Rule 613.

2. c. Other Impeachment.[11] Moreover, the evidence would be otherwise probative for purposes of impeachment of Williams's testimony.

■ Besides those noted by Johnson, another form of impeachment is that "by contradiction" or "by another witness." *See Michael v. State,* 235 S.W.3d 723, 726 (Tex.Crim.App.2007); *Daggett v. State,* 187 S.W.3d 444, 454 n. 24 (Tex.Crim.App.2005) (citing *United States v. Antonakeas,* 255 F.3d 714, 724–25 (9th Cir.2001)); 1 GOODE ET AL. § 607.1, at 690–91 (3d ed.); *id.* § 607.3. Still another form of impeachment is by evidence of defect of capacity, such as of memory. *See Michael* at 726; 1 GOODE ET AL. § 607.4, at 707–708 (3d ed.).

The evidence of which Johnson complains was probative for purposes of impeachment by contradiction of Williams's testimony or impeachment of her memory. Williams had previously testified as follows on direct examination by the State:

Q. Now, do you remember Marcus calling you from the jail and saying, hey,

Baby, you got to go talk to Mr. James and go get a statement from him?

A. No, I don't remember that.

Q. Now do you not remember it or did that not occur?

A. I don't remember that.

(3 R.R. at 94.)

Q. So it wouldn't be unusual for Marcus to say go get a statement from Mr. James?

A. It would be unusual. That'd be unusual.

Q. Why would that be unusual? Why would Marcus ask you to go get a statement from Mr. James?

A. I don't remember him asking me. That is what I'm trying to tell you.

Q. And, again, my question is do you not remember that or did he not do that?

A. I don't remember if he called me and asked me anything like that.

Q. You don't remember him saying take that statement and go get it notarized and take it down to the DA? You don't remember any of that?

A. No.

Q. And, again, do you not remember any of that or did that not happen?

A. I don't remember.

Q. So it could have happened?

A. I do not remember.

(3 R.R. at 95–96.)

Q. And what has Marcus told you about what happened that night?

---

11. After Johnson had made his objections to improper impeachment, the following colloquy took place between the trial court and Johnson's counsel:

THE COURT: Yeah. But that's not all of the impeachment rule. Otherwise you couldn't even ask cross-examination questions because it wouldn't come under that Rule 609.

MS. SHIPLEY: Well, I agree with that. You can certainly cross-examine people and they certainly did that, but [Williams i]s their witness.

(3 R.R. at 144); *see* TEX.R. EVID. 609.

A. What do mean what he told me? He hasn't told me anything. We was there. I already know that happened.

Q. Do you remember him telling you to make sure you told the police that y'all had been together all night?

A. No.

Q. He never told you that?

A. No. He can't tell me something that I already know.

Q. So you're confident then that y'all had been together all night?

A. Yes.

Q. And he never had to tell you to tell that story?

A. No.

(3 R.R. at 96–97.)

The evidence of which Johnson complains was probative for purposes of impeachment. It tended, by contradiction, to impeach her testimony that Johnson did not tell her to give an alibi statement, as he did in the recording. It also tended to impeach her memory, in that she testified that she did not remember particulars of Johnson's conversations with her in the recording.

3. *Substantive Evidence of Guilt.* The evidence of which Johnson complains also constituted evidence of Johnson's consciousness of guilt.

 Texas Rule of Evidence 404 provides that "[e]vidence of other crimes, wrongs or acts" than that on trial: "is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as ... knowledge [or] identity...." Tex.R. Evid. 404(b). "[C]riminal acts that are designed to reduce the likelihood of prosecution, conviction, or incarceration for the offense on trial are admissible under Rule 404(b) as showing 'consciousness of guilt.'" *Ran-*

*som v. State*, 920 S.W.2d 288, 299 (Tex. Crim.App.1996) (op. on reh'g) (quoting, *e.g., Brown v. State*, 657 S.W.2d 117, 119 (Tex.Crim.App. [Panel Op.] 1983)); *see, e.g., Gonzalez v. State*, 117 S.W.3d 831, 842 (Tex.Crim.App.2003); *Pierce v. State*, 234 S.W.3d 265, 268 (Tex.App.–Waco 2007, pet. ref'd). "[A]n attempt to tamper with a witness is evidence of 'consciousness of guilt.'" *Wilson v. State*, 7 S.W.3d 136, 141 (Tex.Crim.App.1999).

In the evidence of which Johnson complains, he admitted, "[T]he officer told me that [Mayo] said he couldn't identify me." (3 R.R. at 166.) Johnson also acknowledged that it was he whom Cox had seen, and admitted, "I didn't even know Mr. James was out there." (*Id.* at 164.) Johnson directed Williams to get a statement from Mayo recanting his statement to officers, and a recanting statement from Cox to the effect that he had seen someone other than Johnson. Johnson also directed Williams to give a statement to police officers to the effect that he had been in bed all night until Sgt. Erisman knocked on Johnson's door. The trial court would not have erred in finding the evidence probative of Johnson's consciousness of guilt.

**B.** *Rule of Evidence 403.* Next, Johnson argues under Rule of Evidence 403. *See* Tex.R. Evid. 403. Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." *Id.*

 We assume without deciding that Johnson preserves his complaint.

Although the Texas Rules of Evidence are intentionally slanted toward the inclusion of all relevant evidence, Rule 403 gives the trial court considerable discre-

tion to exclude evidence when it appears to that individual judge, in the context of that particular trial, to be insufficiently probative when measured against the countervailing factors specified in the rule.

*Winegarner*, 235 S.W.3d at 791; *see Montgomery*, 810 S.W.2d at 378–79 (op. on orig. submission); *id.* at 391–92 (op. on reh'g); *e.g., Mumphrey v. State*, 155 S.W.3d 651, 663 (Tex.App.–Texarkana 2005, pet. ref'd).

[A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex.Crim.App.2006); *see State v. Mechler*, 153 S.W.3d 435, 440 (Tex.Crim.App. 2005); Montgomery at 389–90 (op. on reh'g); *see also Gallo*, 239 S.W.3d at 762. "The rule gives the trial court considerable latitude to assess the courtroom dynamics, to judge the tone and tenor of the witness' testimony and its impact upon the jury, and to conduct the necessary balancing." *Winegarner* at 791.

1. *Cumulativeness.* First, Johnson argues that the evidence was cumulative.[12]

Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed ... by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R. EVID. 403.

Texas courts have recognized cumulativeness as a factor that may allow the exclusion of relevant evidence. "Cumulative" suggests that other evidence on the same point has already been received. But this fact, without more, is not a basis for exclusion. The rule pertains to the "needless presentation" of such evidence. Therefore, judges should be sensitive to the "right" of a party to make her case in the most persuasive manner possible. This may demand two or more witnesses or documents addressed to the same material issue, as where the evidence objected to as cumulative carries special weight because it comes from a disinterested source. Similarly, the evidence, although cumulative, may come in a form which enhances its effectiveness. In addition, the cumulative effect of the evidence may heighten rather than reduce its probative force.

*Alvarado v. State*, 912 S.W.2d 199, 212–13 (Tex.Crim.App.1995) (quoting 1 STEVEN GOODE, OLIN GUY WELLBORN III, & M. MICHAEL SHARLOT, TEXAS PRACTICE: GUIDE TO THE TEXAS RULES OF EVIDENCE; CIVIL AND CRIMINAL § 403.3, at 135–36 (2d ed.1993)); *accord Bell v. State*, No. 03–00–00243–CR, 2001 WL 1510836, *10, 2001 Tex.App. LEXIS 7889, at *29 (Tex.App.–Austin Nov. 29, 2001, pet. ref'd) (not designated for publication); *see* 1 GOODE ET AL. § 403.02, at 167 (3d ed.) (citing *Linthicum v. Richardson*, 245 S.W. 713, 715 (Tex.Civ.

12. At trial, Johnson objected that the evidence was "duplicitous," in that "Mr. Cox who is allegedly referred to on these tapes has already testified, been cross-examined." (3

R.R. at 160.) We assume without deciding that, that objection preserves Johnson's cumulativeness complaint.

App.–Beaumont 1922, no writ)). "[E]vidence that may be cumulative as to one point may not have that character with respect to another material issue." 1 GOODE ET AL. § 403.2, at 168 (3d ed.) (citing 2 DAVID W. LOUISELL & CHRISTOPHER B. MUELLER, FEDERAL EVIDENCE § 128 (1978)).

Johnson argues:

> Appellant contends any relevance ... constituted the needless cumulation of evidence. TEX.R. EVID. 403. The recording does not show appellant instructed Williams to suborn perjury. The recording shows appellant asking Williams to pin down a witness, which was precisely what she did, even though it meant Cox identified appellant as the person he saw. This was cumulative of Cox's earlier testimony.

(Br. at 47.)

▉ Evidence that Johnson, as he argues, wanted Williams to "pin down" Cox was not cumulative of Cox's testimony. (*Cf.* Johnson Br. at 47.) When Cox was first called to testify, he did not testify concerning Williams's giving him a statement to sign. Cox testified concerning that only when he was later recalled, after the evidence of which Johnson complains was admitted. Johnson does not show that the trial court abused its discretion in overruling Johnson's cumulativeness objection.

▉ 2. *Unfair Prejudice.* Next, Johnson argues that the evidence was unfairly prejudicial.

▉ Rule 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." TEX.R. EVID. 403. "Unfair prejudice refers not to an adverse or detrimental effect of evidence but to an undue tendency to suggest a decision on an improper basis." *Casey v. State,* 215 S.W.3d 870, 883 (Tex.Crim.App.

2007) (citing *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)); *accord Gigliobianco,* 210 S.W.3d at 641; *Rogers v. State,* 991 S.W.2d 263, 266 (Tex.Crim.App.1999); *Montgomery,* 810 S.W.2d at 389 (op. on reh'g). "Unfair prejudice does not arise from the mere fact that evidence injures a party's case. Virtually all evidence that a party offers will be prejudicial to the opponent's case, or the party would not offer it." *Casey* at 883 (citing *Cohn v. State,* 849 S.W.2d 817, 820 (Tex.Crim.App.1993)). "To violate Rule 403, it is not enough that the evidence is 'prejudicial'—it must be *unfairly* prejudicial." *Vasquez v. State,* 67 S.W.3d 229, 240 (Tex.Crim.App.2002) (citing Rogers at 266) (emphasis in *Vasquez*). "Evidence is unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Casey* at 883 (citing *United States v. Figueroa,* 618 F.2d 934 (2d Cir. 1980)). "The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Id.*

> ... Rule 403's "use of the word 'may' reflects the draftsman's intent 'that the trial judge be given a very substantial discretion in "balancing" probative value on the one hand and "unfair prejudice" on the other, and that he should not be reversed simply because an appellate court believes that it would have decided the matter otherwise.' "

*Powell v. State,* 189 S.W.3d 285, 288 (Tex. Crim.App.2006) (quoting *Manning v. State,* 114 S.W.3d 922, 926 (Tex.Crim.App. 2003)); *see Montgomery* at 391 (op. on reh'g).

Johnson argues:

> Appellant contends any relevance was substantially outweighed by the danger

of unfair prejudice.... TEX.R. EVID. 403.... The unfair prejudice ... lay in the possible appearance appellant was attempting to suborn perjury. As explained in the sufficiency complaint, even assuming Cox saw appellant, it does not follow that appellant committed the robbery.

(Br. at 47.) We assume without deciding that Johnson's issue is adequately briefed. We agree with Johnson that the evidence does not clearly show subornation of perjury. The evidence does, however, fairly show that he sought to hinder his prosecution. We understand Johnson to argue that the only probative value of the evidence was to prove that it was Johnson whom Cox saw. For the reasons stated above, though probative on that matter, the evidence also had probative value on Johnson's consciousness of guilt and on other matters. Johnson does not show that the trial court abused its discretion in overruling Johnson's objection to unfair prejudice.

CONCLUSION. Having found that Johnson does not show that the trial court erred in overruling Johnson's evidentiary objections, we overrule Johnson's third issue.

**Conclusion.** Having overruled Johnson's issues, we affirm.

Justice VANCE concurring.

BILL VANCE, Justice, concurring.

I write to further address Johnson's fourth issue concerning the standard of review for factual-sufficiency issues on appeal.

"The essential guarantee of the Due Process Clause is that the government may not imprison or otherwise physically restrain a person except in accordance with fair procedures." *Long v. State*, 742 S.W.2d 302, 320 (Tex.Crim.App.1987), *overruled on other grounds by Briggs v.*

*State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990). "The Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970); *Fisher v. State*, 887 S.W.2d 49, 52–53 (Tex.Crim.App.1994). "The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to 'instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" *Winship*, 397 U.S. at 370, 90 S.Ct. at 1076 (Harlan, J., concurring).

The Court of Criminal Appeals has attempted to definitively state the standard of review for testing the factual sufficiency of the evidence to support the elements of a criminal conviction on at least seven occasions: *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996); *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim.App.2000); *Goodman v. State*, 66 S.W.3d 283, 285–87 (Tex.Crim.App.2001); *Zuliani v. State*, 97 S.W.3d 589, 593–94 (Tex.Crim.App.2003); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004) (overruled in part on other grounds by *Watson*); and *Watson v. State*, 204 S.W.3d 404, 415 (Tex.Crim.App.2006).

The court proclaimed in *Zuniga*: "There is only one question to be answered in a factual sufficiency review: Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Zuniga*, 144 S.W.3d at 484. That proposition was restated in *Watson*. *Watson*, 204 S.W.3d at 415. But the court then backed away from the following pronouncement from *Zuniga*: "This standard acknowledges that evidence

of guilt can 'preponderate' in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. Stated another way, evidence supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." *Zuniga*, 144 S.W.3d at 485; *see Watson*, 204 S.W.3d at 416 ("The problem is exacerbated by what our *Zuniga* opinion says next...."). In my view, *Watson* did not solve a problem; it created a due-process problem.

In *Watson*, the court justified its rejection of the *Zuniga* factual sufficiency standard by measuring it against its own standard of a "high level of skepticism" and concluded, "Any holding that a criminal appellate court can reverse and remand for a new trial even when the evidence 'preponderates' in favor of a conviction is inconsistent with that historically required high level of skepticism."[1] *See Watson*, 204 S.W.3d at 417. Is the court saying that a conviction must be affirmed when the evidence preponderates in favor of conviction but does not meet the beyond-a-reasonable-doubt-standard? If so, such an affirmance would violate the due-process requirement outlined in *Winship*.

Recognizing that we are bound by the decisions of the Court of Criminal Appeals, I concur in the judgment.

---

**1.** The United States Supreme Court recognized in *Tibbs v. Florida* that a state court's construction of its prior opinions might conflict with the Due Process Clause. *Tibbs v. Florida*, 457 U.S. 31, 47–48, 102 S.Ct. 2211, 2221, 72 L.Ed.2d 652 (1982) ("Absent a conflict with the Due Process Clause....").