**Larry Joe KNOX, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 45432.**

Court of Criminal Appeals of Texas.

Dec. 6, 1972.

Jack Hampton, Dallas, for appellant.

Henry Wade, Dist. Atty., Robert T. Baskett, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., and Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal arises out of a rape conviction where the jury assessed the punishment at confinement in the Texas Department of Corrections for 1,001 [1] years.

At the outset, appellant challenges the sufficiency of the evidence to sustain the conviction. The court submitted the case to the jury on rape by force and rape by threats. A general verdict was returned.

[1]. The assistant district attorney recommended in jury argument that a penalty of 1,001 years be assessed, and, without objection, told the jury that it was a lesser penalty than life imprisonment. In Miller v. State, 465 S.W.2d 150 (Tex. Cr.App.1971), we concluded that similar argument and recommendation was "somewhat ridiculous." And, in Sills v. State, 472 S.W.2d 119, 120 (Tex.Cr.App.1971), where a 1,000-year penalty was assessed in a robbery by assault case, this court invited the Legislature to review the entire sentencing structure in criminal cases, and to, at least, set a maximum and a minimum penalty for every offense, pointing out that sentences as the one in Sills "serve no purpose." We adhere to what we said in Miller and Sills, and again invite the Legislature's attenion to this matter.

The prosecutrix, a 25-year old divorcee, testified she met the appellant on June 29, 1969 at the swimming pool of the apartment complex where they both resided in the City of Dallas; that she saw him briefly the next day and then went to work at the telephone company from 6 p. m. until 12 midnight and returned to the apartment complex shortly after midnight where she saw the appellant near the pool at which time he told her, "Be sure and lock your door."

She related she locked her door and retired about 2 a. m. and later "woke up struggling" to find the appellant in bed with her, choking her and stating, "Don't yell." She "struggled for quite awhile," and "was really fighting"; felt her eyes swelling and noticed they were excessively moist; "wet." In the struggle, she fell from the bed and was able to persuade her assailant to let her go to the bathroom where she found a gash or cut over her left eyebrow, cuts behind her ears and head, and on her wrist, blood in her hair, and that her eyes were almost swollen shut. At this time, she observed that the appellant had a razor blade clenched between his teeth and that he smelled of alcoholic beverages. At her request, he put the razor blade down but refused to allow her to call an ambulance and ripped off her nightie and ordered her back to bed. Appellant then removed her panties, pulled her legs apart and proceeded to have sexual intercourse with her. At this time, prosecutrix "was really scared" and in fear of her life. When the act was completed, she suggested to the appellant that they go outside to get some fresh air and he agreed. Then, he went into the bathroom and the prosecutrix grabbed some clothes and fled to another nearby apartment house where she reported to her friends, the Evers, that "he tried to kill me." She was then taken to a hospital where her cuts were treated and she was also examined by a doctor who found sperm in her vagina.

Mike Evers testified that when the prosecutrix appeared at his apartment, she was so bloody and "messed up," he didn't recognize her at first. Lynn Evers testified that on the way to the hospital the prosecutrix revealed she had been raped.

Other evidence offered by the State showed the prosecutrix's apartment door had been forced, that her nightie was bloody and torn, that the bed was bloody and a razor blade was found in the bathroom.

Testifying in his own behalf, the appellant related the prosecutrix invited him to her apartment, had consented to the act of intercourse, and then had demanded money, stating that otherwise she would yell "rape." He further testified that when he refused, she threw an ashtray at him breaking it; that he then struck her, knocking her from the bed onto the floor where she cut herself on the broken ashtray. He admitted that he had a razor blade in his hip pocket for the purpose of car repairs and that it must have fallen out when he used his handkerchief to stop the prosecutrix's bleeding. He acknowledged that he immediately fled the apartment complex and stayed with various friends until he was arrested two weeks later for fear that the prosecutrix would, in fact, file rape charges.

In rebuttal, the State offered other evidence to point up a number of inconsistencies in the appellant's testimony. The jury chose to believe the State's version of the facts and the evidence is sufficient to support their verdict.

In Gorman v. State, 480 S.W.2d 188 (Tex.Cr.App.1972), this court wrote:

"The jury was charged on rape by force and threats. When both force and threats are alleged and there is evidence of each, it is not necessary that either the force or the threats alone measure up to the statutory definition. . . . The jury may consider the cogency that

the threats may have contributed to the force and the intensifying influence that the force may have had on the threats. . . . " 480 S.W.2d at 189.

Appellant, however, apparently takes the position that although he did not object to the court submitting a charge of rape by force and also by threats, there was "no evidence of any threats," and the conviction must stand or fall on whether the offense of rape by force was shown by the evidence.

█ Assuming, without deciding that appellant is correct, we conclude the evidence is sufficient to support a conviction for rape by force.

Article 1184, Vernon's Ann.P.C., provides that

"'force' . . . must have been such as might reasonably be supposed sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case."

And, the facts of each individual case determine whether force exists, which, of necessity, renders it impossible to lay down a fixed standard by which it may be said that force has or has not been applied, in a rape case. See Bundren v. State, 152 Tex.Cr.R. 45, 211 S.W.2d 197 (1948); Zamora v. State, 449 S.W.2d 43 (Tex.Cr. App.1969).

In the instant case, the 22-year old appellant was shown to be 5'6" tall, weighing 145 pounds. While the record is silent as to the size or strength of the prosecutrix, there were other circumstances. The prosecutrix was shown to have been choked until her eyes were almost swollen shut, and she was cut about the eyes and back of her head, etc., with a razor blade. Despite this, she continued to struggle until she had fallen from the bed. Only after observing the extent of her injuries, and the fact that she was bleeding profusely, did she cease her resistance.

As Judge Douglas observed in Whitaker v. State, 467 S.W.2d 264 (Tex.Cr.App. 1971), it is difficult to imagine just how much resistance a woman is required to exhibit when faced with the possibility of death or bodily harm. See also Gorman v. State, supra.

Appellant's first contention is overruled.

Appellant also complains the court erred in allowing him "to be impeached by proof of details of a prior conviction."

█ On direct examination at the guilt stage of the trial, appellant's counsel established that appellant had previously been convicted of "an aggravated assault on a female" to which charge he had pled guilty.

On cross examination, the prosecutor inquired,

"Q Now, you said awhile ago you had been convicted of what, what did you tell your attorney awhile ago?

A Convicted of aggravated assault.

Q Who was that on?

A A female.

Q What did you assault her with?

A A knife.

MR. HAMPTON (Defense Counsel): The details are not admissible."

The court overruled the objection. Alough exception to the court's ruling was made, no further relief was requested.

Thereafter, the prosecutor briefly established that the conviction was, in fact, for "aggravated assault with a knife" committed "on a woman."

The appellant first injected the prior conviction into evidence and the only additional evidence elicited on cross examination was the fact the aggravated assault was committed with a knife which in fact

was the true nature of the offense.[2] See Article 1147(10), Vernon's Ann.P.C. The appellant, having opened the door, is in no position to complain if the State, on cross examination, establishes the true nature of the offense. The State did not improperly go into the details of a prior conviction.

Appellant further complains of the introduction of the complaint and information regarding this prior misdemeanor conviction at the penalty stage of the trial.

■ To show appellant's "prior criminal record," as permitted by Article 37.07, Vernon's Ann.C.C.P., the State offered the judgment of the prior conviction, earlier admitted by the appellant, as well as the complaint and information in such cause. Appellant did not object to the introduction of the judgment of conviction but objected as to the materiality of "the charge." On appeal, he complains the same was hearsay and tended to prove details of the prior conviction. The State takes the position that the objection made was not sufficient to preserve this ground of error for the purpose of appeal. See, i. e., Jenkins v. State, 468 S.W.2d 432 (Tex.Cr.App.1971); Crestfield v. State, 471 S.W.2d 50 (Tex. Cr.App.1971). We, nevertheless, hold that in proving an accused's "prior criminal record" the pleadings, i. e., indictment, complaint, and information are admissible. Further, in the instant case, the appellant had originally injected the conviction into evidence.

Appellant's contention is without merit.

Appellant also contends the court erred in admitting into evidence, over objection, the bloody razor blade found in the apartment and the prosecutrix's bloody nightgown.

■ It is well settled that the weapons or instruments with which an offense has been committed or alleged to have been committed are admissible. The fact that the instrument may still have bloodstains on it does not render it inadmissible. See 2 McCormick & Ray 2nd Ed. Evidence § 392, p. 302; 23 Tex.Jur.2d Evidence § 392, p. 583.

In 4 Branch's Ann.P.C. 2nd Ed. § 2029, p. 340, it is written:

"It is permissible to introduce bloody clothing in evidence only when the introduction serves to illustrate some point or solve some question, or serves to throw light upon the matter connected with the proper solution of the case, and under no other circumstances; but whenever the introduction of such clothing would, in light of the whole case, aid the jury in arriving at the very truth of the matter, the court should not hesitate to admit its production and exhibition. . . . "

In the now well-cited case of Brown v. State, 475 S.W.2d 938, 954 (Tex.Cr.App. 1972), the court observed that, while the general rule is in favor of exclusion of bloody clothing, the exception thereto may be based upon any ground of relevancy and much discretion rests with the trial judge.

■ In the instant case, the contested issue was that of consent. The bloody and torn nightgown was clearly admissible. The fact that the appellant gave another explanation as to how the gown became bloody does not call for a different result.

■ Still further, the appellant contends the trial court erred in admitting a hearsay statement of the prosecutrix which was not res gestae.

---

2. It is observed that aggravated assault, not committed on a female (Article 1147 (9), Vernon's Ann.P.C.), is not a misdemeanor involving moral turpitude and is not available for impeaching. Valdez v. State, 450 S.W.2d 624 (Tex.Cr.App. 1970). Since appellant "opened the door," we need not decide if a misdemeanor conviction for aggravated assault with a knife (Article 1147(10), Vernon's Ann.P.C.) and committed upon a woman is a misdemeanor conviction involving moral turpitude so as to permit its use for the purpose of impeachment.

The prosecutrix fled from her apartment to that of her friends, the Evers. The record reflects that when she arrived, she was covered with blood, was hysterical, etc., and blurted out, "He tried to kill me." She was in the Evers' apartment for approximately 15 minutes, while the police were called and her wounds were treated, after which she and Lynn Evers, her friend and fellow employee, left for the hospital. Shortly thereafter, she stated, while alone for the first time with her woman friend, that she "had been raped." She did not identify her assailant. It is the introduction of this statement of which the appellant complains.

While the predicate for the admission of this statement was not well laid, there was no break or letdown in the continuity of the transaction to show that the statement was not spontaneous. Under the circumstances, we conclude the statement was admissible as part of the "res gestae."

Further, in 48 Tex.Jr.2d Rape § 56, p. 691, it is written:

"The fact that the prosecutrix cried out or complained of an outrage perpetrated on her, shortly after its occurrence, may be proved by the state. . . . Though the details of the cry or complaint must be part of the res gestae in order to be admissible as original evidence, the question whether the statements made were strictly res gestae is immaterial where the evidence is confined to the bare fact of complaint."

In the instant case, even if it can be argued that the statement was not a part of the res gestae or that the proper predicate was not laid, the State's evidence in question was limited to "the bare fact of complaint."

Lastly, appellant asserts the trial court committed reversible error in allowing the prosecutor "to argue the contents of newspapers" in his jury argument at the penalty stage of the trial.

The prosecutor argued:

"Secondly, the other issue is what kind of protection are you going to give your women folks in Dallas County? It has once been said that you can judge the height of a civilization by the kind of protection that they afford their women folks. What kind of civilization do we have today? *You only have to pick up the newspaper to say we are going to hell at a hundred miles an hour.*" (Emphasis added.)

Appellant objected that the contents of the newspaper were not in evidence. The objection was overruled, exception was taken, but no further relief requested.

 Without citation of authority, appellant urges reversible error. While it is the duty of trial counsel to confine arguments to the record and references to facts that are neither in evidence nor inferable therefrom are improper, we conclude the instant argument was a plea for law enforcement and not so improper as to call for reversal of the cause.

The judgment is affirmed.