Charles G. **HANNER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 53786.

Court of Criminal Appeals of Texas, En Banc.

Nov. 1, 1978.

Luke W. Able, Jr., Houston, for appellant.

Ogden Bass, Dist. Atty. and Jerome L. Farrer, Asst. Crim. Dist. Atty., Angleton, for the State.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for rape by force.[1] The jury assessed the appellant's punishment at fifteen years' confinement in the Texas Department of Corrections.

The appellant contends that the trial judge erred by: (1) failing to delete portions from the appellant's written confession before it was admitted into evidence;

---

1. V.T.C.A., Penal Code Section 21.02(b)(1).

(2) allowing the appellant's amended motion for new trial to be overruled by operation of law without holding a hearing on it; (3) allowing, in four instances, the introduction of hearsay evidence; (4) overruling the appellant's motion for mistrial; (5) failing to instruct the jury that they must find, beyond a reasonable doubt, that the appellant's penis penetrated the prosecutrix's vagina; (6) failing to instruct the jury on the lesser included offense of attempted rape; (7) failing to rule on the appellant's objection to the prosecutor's final argument; (8) failing to allow the appellant to develop and introduce evidence of jury misconduct and other errors during the appellant's hearing on his amended motion for new trial. We affirm.

The trial testimony reveals that in the early hours of May 20, 1975, the prosecutrix drove from Shreveport, Louisiana, to Surfside Beach in Freeport. The prosecutrix spent the day on the beach. At approximately 6:00 p. m., the appellant, the appellant's cousin, Charles Gilbreath, and another person identified only as James were driving along Surfside Beach when they saw the prosecutrix. At that time, the prosecutrix was putting together a charcoal grill. As Gilbreath drove the Plymouth by the prosecutrix, the appellant asked her if she needed any help. She responded that she did not need any assistance and Gilbreath continued to drive down the beach.

Gilbreath turned the car around and drove toward the prosecutrix. The appellant again asked the prosecutrix if she needed any help and she again responded in the negative. The next thing the prosecutrix realized, the appellant was standing beside her trying to make "small talk." She merely continued to put the grill together.

The prosecutrix finally asked the appellant to leave.[2] The appellant asked why, and she told him that she had come to the beach to be alone. The appellant then started to walk down the beach.

Just as the appellant started to walk down the beach, the prosecutrix realized that a nearby Winnebago camper was in the process of leaving. The prosecutrix picked up her grill and put it into the hatchback of her car. She then got into her car to drive away, but the appellant came up to the driver's side of the prosecutrix's car, grabbed the door, opened it and forced himself inside, thereby forcing the prosecutrix over to the middle of the car. The prosecutrix asked him what he was doing and told him to leave her car.

When the appellant failed to respond to her demand to leave her car, she attempted to escape out the passenger side of the car. The appellant, however, put his arm around her neck and restrained her. Then the appellant told her "to shut up, to quit hollering," and that he "had a gun" and "he would use it" if necessary.

A physical struggle ensued during which the appellant punched the prosecutrix in her left eye. The force and threats employed by the appellant were sufficient to subdue the prosecutrix to the point where the appellant was able to start the car and drive it down the beach. As the appellant drove the prosecutrix's car down the beach, he had his arm around her neck and was feeling her breasts while telling her that he was going to "f—k" and "e—t" her.

The appellant stopped the car, but the appellant's companions drove up. The appellant promptly started the prosecutrix's car and drove further along the beach. When the appellant subsequently stopped her car, the appellant told the prosecutrix to take off her clothes. The prosecutrix, who was crying, begged the appellant to let her alone. The appellant yelled at the prosecutrix and hit her again. He then ripped off the top button of the prosecutrix's blouse. The prosecutrix then removed her clothes and laid down on the front seat.

The appellant unzipped his pants and attempted to insert his penis into the prosecutrix's vagina. The prosecutrix testified that the appellant could not achieve an "erection" and that, despite his efforts, his penis only partially penetrated her vagina.

2. By this time Gilbreath and the other occupant of the car had left the immediate vicinity.

The appellant subsequently forced the prosecutrix into the back portion or hatchback area of her car. He then continued to rape her for approximately ten to fifteen minutes.

Thereafter, the appellant got out of the prosecutrix's car and told her that he would kill her if she reported the occurrence. The prosecutrix got into the driver's seat and attempted to drive away, but the car got stuck in the sand. The appellant recruited Gilbreath and James to assist him in getting the prosecutrix's car out of the sand. The Plymouth was subsequently backed up to the prosecutrix's car so that chains could be attached to it.

Meanwhile, a car driven by Edward Springs, which had driven by the prosecutrix's car twice during the rape, passed by a third time. The prosecutrix waved at him and attracted his attention. Springs drove up and watched the appellant and his companions free the prosecutrix's car from the sand. At that time, the prosecutrix drove off and Springs followed her. When the prosecutrix stopped her car a short way down the beach, Springs got out of his car and asked her if she had been attacked. The prosecutrix responded in the affirmative and Springs took the prosecutrix to a nearby convenience store to call the police.

The police were summoned, and the prosecutrix was examined by a physician. There was no evidence of sperm in her vagina and no evidence of any trauma in her pelvic area.

The defensive testimony focused on the appellant's alcoholic condition during the time of the rape. The testimony tends to show that it would have been impossible for the appellant to have been able to have sexual intercourse with the prosecutrix. The defense also presented evidence that any sexual contact between the appellant and the prosecutrix was consensual in nature.

█ The appellant's first contention is that the trial judge erred by failing to delete a portion of the appellant's confession. The portion of which the appellant complains is the underlined portion of the following:

"I met some old woman on the street and took her to Rosie's. We had a beer there then I was going to take the woman back to the Cozy Lounge. I told Ray to come back to the Cozy and pick me up.

"Just as I got outside the Cozy, I was picked up by Freeport Police Department."

The events which the appellant wanted deleted occurred after the rape. The appellant contends that the events reveal an extraneous instance of immorality. The appellant relies upon *Chatterfield v. State,* 436 S.W.2d 146 (Tex.Cr.App.1969).

In *Chatterfield,* the defendant was charged with assault to rob. Over the defendant's objection, the prosecutor elicited, in his case-in-chief, a telephone conversation the defendant had with a married woman within one hour of the commission of the offense. This Court there held that

"[t]he testimony relating the telephone conversation was not pertinent to any issue raised on the trial, and shows appellant's conduct which was wholly disassociated with the offense for which he was on trial, and was of such a nature that it was reasonably calculated to prejudice his rights and deprive him of a fair and impartial trial on the issue of whether the jury would recommend that his sentence be probated."

However, we do not view the "objectable" portion of the appellant's confession as evidence of an extraneous offense unrelated to the offense on trial. Rather, the events demonstrate the appellant's actions following the rape. The appellant's actions immediately after the rape were admissible to show the complete context in which the criminal act occurred. *Albrecht v. State,* 486 S.W.2d 97 (Tex.Cr.App.1972). Cf. *Lewis v. State,* 529 S.W.2d 533 (Tex.Cr.App. 1975).

Moreover, even if the objectionable portion of the confession should have been deleted to avoid any possibility of prejudice, we do not consider the objectionable portion of the appellant's confession to be so preju-

dicial as to conclude that the trial judge abused his discretion in refusing to delete it. Cf. *DeLeon v. State,* 500 S.W.2d 862 (Tex.Cr.App.1973). Appellant's first contention is overruled.

■ The appellant's second contention is that the trial judge erred by allowing the appellant's amended motion for new trial to be overruled by operation of law.[3]

On January 23, 1976, the jury returned a verdict finding the appellant guilty. The jury assessed the appellant's punishment at fifteen years. That same day, the trial judge entered the judgment and set the sentencing for February 5, 1976.

On February 4, 1976, the appellant filed his motion for new trial. The appellant's motion for new trial was overruled by the trial judge on February 5, 1976, sentence was pronounced, and appellant gave notice of appeal. On February 9, 1976, the appellant filed an amended motion for new trial and the trial judge set a hearing for February 19, 1976. However, a hearing on the amended motion for new trial was not held until March 18, 1976. Because notice of appeal was not withdrawn and the sentence was not set aside before the February 9 motion for new trial was filed, the trial court lacked jurisdiction to entertain it and it should not have been considered. *Locke v. State,* 502 S.W.2d 1 (Tex.Cr.App.), and authorities cited there. The ground of error is overruled.

■ The appellant's third, fourth, fifth and sixth grounds of error contend that the trial judge impermissibly allowed the prosecutor to introduce hearsay evidence of the prosecutrix's statements to Edward Springs and that these statements bolstered the prosecutrix's unimpeached testimony.

The statements made by the prosecutrix to Springs, by the prosecutrix, and introduced through Springs were that: (1) the prosecutrix did not know the men; (2) the prosecutrix was molested by the large man; (3) the prosecutrix told the appellant that she would not report him if he turned her

loose; and that (4) the appellant told her that he would kill her if she reported the rape.

All of these statements were made by the prosecutrix or repeated to Springs within a very short period after the offense was committed. In *Knox v. State,* 487 S.W.2d 322, 327 (Tex.Cr.App.1972), we quoted the following from 48 Tex.Jur.2d, Rape, Section 56, p. 691:

"'The fact that the prosecutrix cried out or complained of an outrage perpetrated on her, shortly after its occurrence, may be proved by the state. . . . Though the details of the cry or complaint must be part of the res gestae in order to be admissible as original evidence, the question whether the statements made were strictly res gestae is immaterial where the evidence is confined to the bare fact of complaint.'"

We hold that all the foregoing statements were either "confined to the bare fact of complaint" or were res gestae of the offense. *Albrecht v. State, supra; Price v. State,* 496 S.W.2d 103 (Tex.Cr.App.1973). Appellant's third, fourth, fifth and sixth contentions are overruled.

The appellant's seventh contention is that the trial judge abused his discretion by refusing to grant the appellant's motion for mistrial after the prosecutor elicited, on cross-examination, that the defensive witness was the appellant's brother-in-law.

The appellant called Fred Sheffield to testify to the appellant's reputation for being a peaceful and law-abiding citizen. On cross-examination, the prosecutor asked the witness if he was related to the appellant. When Sheffield responded that he was related to the appellant, the prosecutor asked in what manner. Sheffield responded: "Brother-in-law."

■ It is well established that the State should not prove that a defendant in a rape case is married. *Lassere v. State,* 458 S.W.2d 81 (Tex.Cr.App.1970). In the present case, Sheffield's testimony did not

---

**3.** The amended motion for new trial was filed on February 9, 1976. The hearing on the

amended motion for new trial was not held until thirty-eight days later.

reveal that the *appellant* was married, only that the appellant had a brother-in-law. Moreover, during the guilt or innocence stage of the trial, the appellant called his wife to testify that the appellant was physically unable to engage in sexual intercourse when he consumed large quantities of alcoholic beverages. Any error was waived by the introduction of similar evidence by the appellant. Appellant's seventh contention is overruled.[4]

The appellant's eighth contention is that the trial judge erred by failing to charge the jury that they must find, beyond a reasonable doubt, that the appellant's penis penetrated the prosecutrix's vagina.

■ The trial judge defined sexual intercourse to mean "any penetration of the female sex organ by the male sex organ." This language tracked the definition of sexual intercourse set forth in V.T.C.A., Penal Code Section 21.01(3). The trial judge thereafter instructed the jury that they must find beyond a reasonable doubt that sexual intercourse occurred. The charge was proper. No error is shown. Appellant's eighth contention is overruled.

■ The appellant's ninth contention is that the trial judge committed fundamental error by failing to charge the jury on the lesser included offense of attempted rape. Basically, the appellant contends that the defensive evidence of his impotency is the converse of penetration.

The obvious flaw in the appellant's argument is that his request that the trial judge instruct the jury that they had to find, beyond a reasonable doubt, that the appellant's penis had penetrated the prosecutrix's sexual organ, even coupled with the defensive evidence of impotency, did not put the trial judge on notice that the appellant desired an instruction on attempted rape. Also, we are not aware of whether the appellant consciously chose not to submit a

requested instruction on attempted rape in the hope that the jury would believe his impotency defense and acquit him. This is not one of those situations where the appellant's counsel's failure to act cannot be classified as trial strategy. Cf. *Ruth v. State,* 522 S.W.2d 517, 519 (Tex.Cr.App.1975) (Morrison, J., concurring). Fundamental error is not shown. Cf. *Harris v. State,* 522 S.W.2d 199 (Tex.Cr.App.1975). Appellant's ninth contention is overruled.

■ The appellant's tenth contention is that the prosecutor went outside the record during his final argument at the guilt or innocence stage by stating:

"You know things have changed in the last few years. Twenty years ago people didn't even have locks on their doors. People who grew up around here, you would go to people's houses, nobody locked their doors, and now what happens when you go to somebody's house at night? Knock on the door. You are going to sit there and wait three or four minutes while they come and look through the peephole. Then unlock the chain, then undo the dead bolt."

The following then occurred:

"[Appellant's Counsel]: I object to this line of argument. It is completely outside the record and I would object to it. If we could confine ourselves to the record I think we could speed this up, and I object to his going outside.

[Prosecutor]: May I proceed?

"THE COURT: You may."

■ It is plain that the appellant did not obtain an adverse conclusory ruling. *Bailey v. State,* 532 S.W.2d 316 (Tex.Cr.App.1975); *Nichols v. State,* 504 S.W.2d 462 (Tex.Cr.App.1974). Nothing is before us for review. Appellant's tenth contention is overruled.[5]

---

4. We also note that the State could properly elicit the fact that the witness was related to the appellant so as to attempt to show the witness' bias. Cf. *Coleman v. State,* 545 S.W.2d 831 (Tex.Cr.App.1977).

5. The appellant has couched his ground of error in terms that the trial judge erred by failing to rule on the objection. A trial judge has an obligation to rule on objections, but defense counsel likewise have an obligation to press the trial judge to definite ruling on the objection.

The appellant's eleventh through eighteenth grounds of error concern the hearing held on the appellant's amended motion for new trial. Since we have previously held that the trial court lacked jurisdiction to hear the motion, it is clear that the hearing on the amended motion for new trial was not authorized and any errors which occurred during it are not properly before us. Appellant's grounds of error eleven through eighteen are overruled.

The judgment is affirmed.

ROBERTS, Judge, concurring in part and dissenting in part.

I agree with the results reached by the majority. However, I dissent to the method used to dispose of appellant's second ground of error.

At the outset, I note that the appellant was convicted on January 23, 1976. Thus, the appellant had ten days in which to file a motion for new trial and motion in arrest of judgment. Articles 40.05 and 41.02, Vernon's Ann.C.C.P. The appellant had until Monday February 2, 1976, to file these motions.

However, the appellant did not file his motion for new trial until February 4, 1976. The untimely motion for new trial was expressly overruled on February 5, 1976.

On February 9, 1976, an amended motion for new trial was filed. A hearing was held on that untimely filed amended motion for new trial on March 18, 1976.

The essential question is whether the trial judge's action in *expressly* overruling the appellant's untimely filed motion for new trial deprived the trial judge of the power to grant the appellant leave to file an amended motion for new trial.

Article 40.05, Vernon's Ann.C.C.P., states:

"A motion for new trial shall be filed within ten days after conviction as evidenced by the verdict of the jury, *and may be amended by leave of the court at any time before it is acted on within twenty days after it is filed.* Such motion shall be presented to the court within ten days after the filing of the original or amended motion, and shall be determined by the court within twenty days after the filing of the original or amended motion, but for good cause shown the time for filing or amending may be extended by the court, but shall not delay the filing of the record on appeal. . . ." (Emphasis added.)

In *Clopton v. State,* 563 S.W.2d 930 (Tex. Cr.App.1978), the defendant timely filed an original motion for new trial. Twenty days thereafter, the original motion for new trial was overruled *by operation of law.* Thereafter, a second motion for new trial was filed. This Court there held that despite the fact that the original motion for new trial had been overruled by operation of law the trial judge had the power to consider a second motion for new trial and that the record did not have to reflect that the trial judge found that good cause existed for the untimely filing of the second motion for new trial.

A different situation is presented in this appeal. Two factors significantly distinguish the present case from *Clopton:* (1) Unlike *Clopton,* the first motion for new trial was not timely filed; and (2) unlike *Clopton,* the trial judge *expressly* overruled the first motion for new trial.

It is clear that unlike *Clopton* the trial judge did affirmatively rule on the appellant's original motion for new trial within twenty days after it was untimely filed. In light of the language of Article 40.05, Vernon's Ann.C.C.P., and the distinctions between the present case and *Clopton,* I would hold that the trial judge's express ruling on the original untimely filed motion for new trial deprived him of the *power* to grant the appellant leave to file an untimely amended motion for new trial. For this reason I would overrule appellant's second ground of error.