

# IN THE
# TENTH COURT OF APPEALS

_____

### No. 10-18-00156-CR

_____

**ANTHONY PAUL MACHINA,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

_____

### From the 19th District Court
### McLennan County, Texas
### Trial Court No. 2015-1754-C1

_____

## MEMORANDUM OPINION

_____

In four issues, appellant, Anthony Paul Machina, challenges his convictions for

indecency with a child by contact and aggravated sexual assault of a child. *See* TEX. PENAL

CODE ANN. §§ 21.11, 22.021 (West 2019). Specifically, Machina contends that: (1) the trial

court abused its discretion by excluding the testimony of a defense expert; (2) the trial

court abused its discretion by admitting excerpts from a journal written by Machina that

was subsequently destroyed; (3) the trial court abused its discretion by admitting

evidence about an altercation in the courthouse parking lot between several of Machina's family members; and (4) the court cost imposed for a time-payment fee is unconstitutional. We overrule Machina's first three issues. Further, we conclude that section 133.103(b) and (d) of the Local Government Code is facially unconstitutional, modify the trial court's judgment in Count IV (indecency with a child by contact) to reduce the time-payment fee from $25 to $2.50, and affirm the trial court's judgment in Count III and Count IV, as modified.[1]

## I.     EXCLUSION OF THE TESTIMONY OF MACHINA'S DEFENSE EXPERT

In his first issue, Machina argues that the trial court abused its discretion by excluding the testimony of his expert, Dr. Joanne Murphey, on the basis of lack of qualifications and that the exclusion of this testimony violated his right to present a defense. We disagree.

## A.     Applicable Law

A trial judge's decision on the admissibility of evidence is reviewed under an abuse-of-discretion standard and will not be reversed if it is within the zone of reasonable disagreement. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). If the trial court's ruling is correct on any theory of law applicable to the case, we must uphold the judgment. *See Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

---

[1] The State has filed a motion for extension of time to file its appellee's brief in this matter. After review, we grant this motion.

Admission of expert testimony is governed by Texas Rule of Evidence 702, which provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702.

Before admitting expert testimony under Rule 702, the trial court must be satisfied that three conditions are met: (1) the witness qualifies as an expert by reason of his or her knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Rodgers v. State*, 205 S.W.3d 525, 527 (Tex. Crim. App. 2006) (citing *Alvarado v. State*, 912 S.W.2d 199, 215-16 (Tex. Crim. App. 1995); *see Latimer v. State*, 319 S.W.3d 128, 133 (Tex. App.—Waco 2010, no pet.).

**B.    Discussion**

In the instant case, Machina called Dr. Murphey to testify as a defense expert. The State requested a Rule 702 hearing. *See* TEX. R. EVID. 702. At this hearing, Dr. Murphey indicated that she had concerns about the forensic interview of Z.N., the child victim. Specifically, Dr. Murphey stated that she was troubled by "follow-up questions that should have been asked and were not, things that needed to be clarified that were not, some repetition that I think was not helpful, and, again, just kind of things that were

missed in the interview." The State objected that Dr. Murphey was unqualified to testify regarding forensic interviews. The trial court initially overruled that State' objection and allowed Dr. Murphey to testify.

However, during Dr. Murphey's testimony, the State objected on the ground of lack of qualifications. In a hearing outside the presence of the jury, the State once again objected to Dr. Murphey's testimony because of her lack of training on forensic interviews, her lack of any peer review of forensic interviews, and her lack of qualifications as an expert on forensic interviews. Additional testimony regarding her experience, training, and qualifications regarding forensic interviews was elicited. This time, the trial court sustained the State's objection and excluded Dr. Murphey's testimony, relying on a decision from the Fourteenth Court of Appeals—*Fox v. State*, 115 S.W.3d 550 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

In *Fox*, the Fourteenth Court of Appeals concluded that the trial court did not abuse its discretion by excluding the testimony of appellant's expert witness Bettina Wright, a healthcare professional, because she was not qualified to testify as an expert in the areas of dealing with abused children and the techniques used to interview abused children. *See id.* at 557, 565. Although Wright has a master's degree in social work and a psychology degree, as well as experience working with Child Protective Services ("CPS"), as a social worker in private practice, and as a Director of Behavioral Health at the Spring Branch Medical Center, the *Fox* Court emphasized that Wright: (1) had only worked on

fifteen to twenty-five cases of child abuse while at CPS; (2) had only worked on twenty to thirty cases of child abuse in private practice; (3) did not concentrate solely on children in private practice; (4) did not have any child-abuse victims as clients at the time of trial; (5) had never conducted independent, scientific studies on sexually-abused children or the proper techniques used to interview abused children; and (6) had not published any articles on sexually-abused children or the protocols for interviewing such children. *Id.* at 565-66. Accordingly, the *Fox* Court held that "because Wright had so little experience in dealing specifically with abused children and little experience in the techniques typically used to interview abused children, the trial court did not abuse its discretion in finding her not qualified to testify as an expert witness." *Id.* at 566.

Similar to the *Fox* case, we cannot conclude that the trial court abused its discretion by concluding that Dr. Murphey was not qualified to testify regarding the field of forensic interviewing of child sexual assault victims. At trial, Dr. Murphey noted that she was qualified to testify because she is a psychologist with "an outpatient practice where I see adults and children, and about, oh, probably 40 percent of my work is a forensic practice." Dr. Murphey further opined that she does "a lot of family law, child custody evaluations primarily. I do some criminal work, often capital murder cases. Occasionally[,] a liability case of some kind, a very small number of that. That's the main of what I do." She later acknowledged that she had testified "less than a dozen" times regarding child forensic interviews in a criminal matter.

In preparation for trial, Dr. Murphey allegedly reviewed the forensic tape and unspecified CPS records, but admitted that she did not bring her complete file and that she could not remember what other files she reviewed. She also denied reviewing the CPS record in this case involving Z.N. She knew nothing of the initial outcry, other than "what I have heard. I think his name is Dr. Smith. Is that correct?" She later clarified that she meant Dr. William Lee Carter, the State's expert.

Dr. Murphey had to be prompted by the prosecutor about what exactly she was going to testify about: "It's going to be primarily about the, I guess, you call it Child Safe or I don't know what name you use here." She further explained that:

> My final opinion was that there were some things on the interview that were concerning to me. . . . Things like follow-up questions that should have been asked and were not, things that needed to be clarified that were not, some repetition that I think was not helpful, and, again, just kind of things that were missed in the interview.

The State then asked Dr. Murphey several times what specialized training she had in child sexual abuse forensic interviews and never received a clear answer. She mentioned that she had attended a national meeting in Reno, Nevada, had worked as a liaison in Appalachia, and had gone to a seminar of which she did not have a record. When asked if she had gone through forensic interviewing training classes using the "block method," which is the national model for forensic interviews, Dr. Murphey answered, "[y]es." However, she did not give any further details. Regarding training for forensic interviewers, Dr. Murphey opined "I'm aware that they are trained. I don't know

if they call it blocks." Dr. Murphey admitted she had not read the literature on forensic interviews "in years."

Dr. Murphey denied publishing any articles regarding proper forensic interview techniques. She also denied conducting any independent studies on the topic of forensic interviews and the proper forensic interview technique. Later in her testimony, Dr. Murphey also conflated a "forensic interview" at the Child Safe Center or an Advocacy Center with a tape recording of a child's outcry statement made during a therapy session. Dr. Murphey also stated that she had never conducted a forensic interview of a child sexual assault victim, nor has she ever been involved in a peer review with other forensic interviewers about a forensic interview done about child abuse. And finally, Dr. Murphey declared that parental interviews in a child-custody evaluation were "a forensic interview."

Based on the foregoing, we hold that, because Dr. Murphey had so little training, experience, and expertise in the field of forensic interviewing of child sexual assault victims, the trial court's determination that Dr. Murphey was not qualified to testify as an expert witness in this area was not outside the zone of reasonable disagreement. *See Fox*, 115 S.W.3d at 565-66; *see also* TEX. R. EVID. 702; *Tillman*, 354 S.W.3d at 435; *Sauceda*, 129 S.W.3d at 120. As such, we cannot say that the trial court abused its discretion by excluding Dr. Murphey's testimony. *See Fox*, 115 S.W.3d at 565-66; *see also* TEX. R. EVID.

702; *Tillman*, 354 S.W.3d at 435; *Sauceda*, 129 S.W.3d at 120. We overrule Machina's first issue.

## II.    MACHINA'S JOURNALS

In his second issue, Machina contends that the trial court abused its discretion by admitting excerpts from a journal he wrote. In particular, Machina alleges that he did not open the door to this extraneous-offense evidence; that the admission of the excerpts from a journal that was subsequently destroyed by law enforcement violated his right to due process and due course of law; and that the probative value, if any, of the excerpts was substantially outweighed by the danger of unfair prejudice.

### A.    Facts

At trial, Machina proffered the testimony of Z.N.'s mother, who, according to Machina, coached a false prior outcry from Z.N. At this time, the State sought to introduce excerpts from a journal Machina wrote, arguing that Schlumph was previously married to Machina and could authenticate his handwriting. Additionally, the State contended that the journal excerpts rebutted Machina's defensive theory of fabrication. Machina objected that he did not open the door to this extraneous-offense evidence; that the admission of the excerpts was highly prejudicial because other portions of his journal were destroyed by law enforcement; and that the danger of unfair prejudice substantially outweighed the probative value of the evidence under Rule 403. *See* TEX. R. EVID. 403. After hearing testimony from Schlumph and arguments from counsel, the trial court

overruled Machina's objections to the journal excerpts and admitted the excerpts into evidence.

In the admitted journal excerpts, Machina made the following statements:

What the hell am I!?  I ask you because no one else has the answer . . .  You don't have the answer either you piece of shit!  You who are you?  Parading around in my flesh.  THIS IS NOT ME!  The marks on my arm attest to that much at least . . .

Today I saw my daughter [the child victim] as a threat . . . Why would that happen? Was is because of Stephen? Perhaps something deeper than he? Something darker, even? I am a good husband, and God help me, I try to be a good father; why would I want to hurt her? My [Z.N.] my sweet; she is my world! Don't get me wrong. I love [T.N.], he is my first born son, and my pride glows with him . . . [Z.N.] though, she is my guiding light, the one who keeps me sane, the one who makes sense of everything. Why did I want to harm her? I bled my own flesh instead . . . but why? What darkness is this? I go to see doctor Green on Monday. This cannot happen again. Ever.

Machina signed this journal entry and included the following phrase and date:  "The madness within.  Monday, January 6, 2014."  As post script, Machina also stated:  "How do I tell her?  How do I tell my incredible wife that I am tainted?  Do I bare all before her?"

## B.      Statement Against Interest and Opening the Door

In arguing that the journal excerpts should have been excluded from evidence, Machina contends that the journal excerpts constitute extraneous-offense evidence and that he did not open the door to the introduction of such evidence.  Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible

to prove the character of a person in order to show action in conformity therewith.  TEX. R. EVID. 404(b).  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  *Id.*  Rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted.  *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003).  Indeed, the State may present extraneous-offense evidence to rebut a defensive theory of fabrication.  *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008).

Machina conceded at trial and the record reflects that he advanced a fabrication defensive theory, arguing that Schlumph had once again coached Z.N. to make a false outcry of sexual abuse.  In that regard, a rational juror could conclude the evidence contained in the journal excerpts constitutes a rebuttal to Machina's defensive theory of fabrication and, thus, would be admissible.  *See* TEX. R. EVID. 404(b); *see also Bass*, 270 S.W.3d at 563; *Moses*, 105 S.W.3d at 626.

## C.    Spoliation

Next, Machina argues that the admission of the excerpts violated his right to due process under the United States and Texas Constitutions.  In cases involving the State's failure to preserve evidence in a criminal trial, the United States Supreme Court has drawn a distinction between "material exculpatory evidence" and "potentially useful evidence."  *See Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S. Ct. 333, 102 L. Ed. 281

(1988); *see also Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). A federal due process violation occurs whenever the State suppresses or fails to disclose material exculpatory evidence, regardless of whether the State acted in bad faith. *See Illinois v. Fisher*, 540 U.S. 544, 547-48, 124 S. Ct. 1200, 157 L. Ed. 2d 1060 (2004); *see also Ex parte Napper*, 322 S.W.3d at 229. However, if a defendant seeks to prove a due process violation based on the destruction of potentially useful evidence, the defendant must show that the State acted in bad faith in destroying the evidence. *Snell v. State*, 324 S.W.3d 682, 684 (Tex. App.—Fort Worth 2010, no pet.); *see Fisher*, 540 U.S. at 547-48 (requiring the defense to show that the State acted in bad faith with regard to an alleged due process violation based on the State's loss or destruction of potentially useful evidence); *see also Jackson v. State*, 50 S.W.3d 579, 589 (Tex. App.—Fort Worth 2001, pet. ref'd) (noting that when an accused complains of lost evidence, he must show that the evidence lost is both material and favorable to him and that the accused must also show that the State acted in bad faith by failing to preserve the evidence).

In his offer of proof, Machina elicited testimony from Michelle Starr, a detective with the Waco Police Department. Detective Starr stated that she had previously investigated a domestic-violence allegation between Machina and Schlumph in 2015. During the investigation, Schlumph provided Detective Starr with a couple of Machina's journals. While reviewing the journals, Detective Starr discovered "some writings in there that would have something to do with the sexual assault case that [Waco Police

Department Detective Jazmin Bucher] was investigating." Two pages of the journals were determined relevant to the sexual-abuse investigation by Detective Bucher and were scanned. Detective Starr admitted that she did not review all of the contents of the journals. Thereafter, the journals were placed in the property room at the police department. On December 8, 2017, Detective Starr completed a "Form 10 for the journals," noting that the journals could be disposed of because they had no value as evidence. Detective Starr did not consult with Detective Bucher before authorizing the destruction of the journals. Ultimately, the journals were taken to the landfill.

"[A]n appellate court review[s] a trial court's ruling on the admission or exclusion of evidence . . . in light of the arguments, information, and evidence that was available to the trial court at the time it ruled." *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003). Here, it appears that the destruction of the journals was due to lack of communication between Detectives Starr and Bucher when investigating their respective cases, which belies Machina's bad-faith argument. *See Ex parte Napper*, 322 S.W.3d at 238 ("As the cases we have discussed show, bad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful. Bad faith cannot be established by showing simply the analyst destroyed the evidence without thought, or did so because that was the common practice, or did so because the analyst believed reasonably that he was following the proper procedure."). Additionally, Machina failed to present any evidence

that the remaining contents of the journals would have been favorable to his defense. Evidence is material only if it creates a reasonable probability that had the evidence been disclosed, the outcome would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011). Because the record is devoid of evidence demonstrating that the State failed to preserve material exculpatory evidence that would have resulted in a different outcome at trial, we are not persuaded by Machina's spoliation argument.

**D.      Texas Rule of Evidence 403**

Additionally, Machina asserts that the probative value of the excerpts was substantially outweighed by the danger of unfair prejudice. We disagree.

Evidence may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403; *see Greer v. State*, 436 S.W.3d 1, 9 (Tex. App.—Waco 2014, no pet.). Rule 403 favors admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Allen v. State*, 108 S.W.3d 281, 284 (Tex. Crim. App. 2003); *Jones v. State*, 944 S.W.2d 642, 652-53 (Tex. Crim. App. 1996). In considering a Rule 403 objection, the trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the

evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006).

The trial court has broad discretion in concluding a Rule 403 balancing test, and we will not lightly disturb the trial court's decision. *Allen*, 108 S.W.3d at 284; *see Greer*, 436 S.W.3d at 9. All testimony and physical evidence will likely be prejudicial to one party or the other. *Jones*, 944 S.W.2d at 653. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value, in other words, the evidence is unfairly prejudicial, that Rule 403 is applicable. *Id.*; *see Montgomery*, 810 S.W.2d at 389.

In the instant case, Machina asserted a defensive theory of fabrication. The State had a need to introduce the journal excerpts to rebut Machina's fabrication defense with his own admission that he wished to harm Z.N. *See Moses*, 105 S.W.3d at 626 (noting that rebuttal of a defensive theory is one of the permissible purposes for which extraneous-offense evidence may be admitted). Further, the record does not reflect that an inordinate amount of time was spent on the presentation of the complained-of evidence. Moreover, the charge included an extraneous-offense instruction limiting the use of the journal excerpts to rebut Machina's defensive theory of fabrication. This mitigates against a finding that the evidence impressed the jury in an irrational way. And finally, there is no

indication in this record that the complained-of evidence improperly inflamed the passions of the jury such that a decision was rendered on an improper basis.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the complained-of evidence and its probative value. *See id.; see also Conner*, 67 S.W.3d at 202. Thus, we cannot conclude that the trial court abused its discretion by admitting the complained-of evidence. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42; *Allen*, 108 S.W.3d at 284; *Jones*, 944 S.W.2d at 653; *Montgomery*, 810 S.W.2d at 389. Accordingly, we overrule Machina's second issue.

### III. THE ALTERCATION IN THE COURTHOUSE PARKING LOT

In his third issue, Machina asserts that the trial court abused its discretion by admitting evidence, during the punishment phase of trial, regarding an altercation that occurred in the courthouse parking lot during the course of the trial. Specifically, Machina complains that the evidence is barred by article 37.07, section 3(a) of the Code of Criminal Procedure because he was not involved in the altercation. Additionally, Machina argues that the incident did not constitute proper impeachment evidence.

Under article 37.07, section 3(a)(1) of the Code of Criminal Procedure, the State may introduce, at punishment, evidence of "an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible . . . ." TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2018).

> Prior crimes or bad acts are introduced to provide additional information which the jury may use to determine what sentence the defendant should receive. The statute requires that such evidence may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that these prior acts are attributable to the defendant. Once this requirement is met, the fact-finder may use the evidence however it chooses *in assessing punishment*.

*Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999) (emphasis in original). Article 37.07 does not "deprive the jury of its ultimate fact finding role." *Escovedo v. State*, 902 S.W.2d 109, 114 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd).

Machina's mother, Pamela Machina, testified that Machina and the rest of his family were in the parking lot after trial finished on April 5, 2018. Z.N. and Schlumph were on the Sixth Street side of the McLennan County courthouse at this time at the insistence of Machina's brother Andy, who was now dating Schlumph and believed that they needed to keep away from his family. As Andy was returning to his car, Pamela ran over and beat on the windshield of Andy's car while calling him a "son of a bitch" and a "pussy." Pamela was upset that Andy was dating Schlumph, who the family believed coached Z.N. to make a false outcry of sexual abuse in this case. The confrontation caught

the attention of sheriff's deputies, who admonished the family about harassing the child victim and her family. Thereafter, Pamela and several members of the Machina family followed the car driven by Andy for six blocks. During this drive, Z.N. and Schlumph were inside Andy's car.

Prior to Pamela's testimony about this incident, Machina made relevance and Rule 403 objections. The trial court overruled Machina's objections, but granted him a running objection to this line of questioning.

Later, Machina elicited testimony from his sister about the parking-lot incident. Linda stated that Machina had already left the parking lot when the incident occurred. Linda admitted to calling Andy a liar and a coward out the window of the car while she was pulled alongside Andy's car.

Regardless of whether or not Machina was present in the parking lot, there is no evidence in this record indicating that Machina himself engaged in activities in the parking lot for which he could have been criminally responsible. Thus, we cannot say that this evidence was admissible under article 37.07, section 3(a)(1). *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1).

However, despite the foregoing, the State argues that the evidence was also admissible to impeach Machina's punishment witnesses. "Parties are allowed great latitude to show 'any fact which would or might tend to establish ill feeling, bias, motive

and animus on the part of the witness.'" *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (quoting *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987)).

> Our rules of criminal evidence expressly recognize the right to impeach a witness by proof of circumstances or statements showing bias or interest on the part of the witness. Unlike an attack on a witness's character, which reflects on the witness's truth[]telling tendencies generally, an attack concerning bias or interest relates only to the specific litigation or parties. The impeaching party must attempt to show that the witness's attitude is such that he is likely to favor or disfavor a particular litigant's position for reasons unrelated to the merits of the suit.

> The rules of evidence grant a party greater latitude to prove a witness's bias than to prove a witness's untruthful character. For the purpose of impeaching his credibility, a witness's character may be attacked by opinion or reputation evidence and by proof of certain criminal convictions. Other than conviction of a crime, a witness's character for truthfulness may not be impeached by specific instances of conduct. Rule 608(b) is very restrictive and allows for no exceptions. Rule 61[3], by contrast, places no limits on the sort of evidence that may be adduced to show a witness's bias or interest. Evidence of bias or interest covers a wide range, and the field of external circumstances from which probable bias or interest may be inferred is infinite.

*Gonzales v. State*, 929 S.W.2d 546, 549 (Tex. App.—Austin 1996, pet. ref'd) (internal citations omitted); *see Carroll v. State*, 916 S.W.2d 494, 497-98 (Tex. Crim. App. 1996) ("The rule encompasses all facts and circumstances, which when tested by human experience, tend to show that a witness may shade his testimony for the purpose of helping to establish one side of the cause only." (quoting *Jackson v. State*, 482 S.W.2d 864, 868 (Tex. Crim. App. 1972))). A witness's familial or personal relationship with a party are among the facts and circumstances that can be used to show bias. *See, e.g., Hanner v. State*, 572 S.W.2d 702, 707 n.4 (Tex. Crim. App. 1978) ("We also note that the State could properly

elicit the fact that the witness was related to the appellant so as to attempt to show the witness' bias.").

In the instant case, the parking-lot incident demonstrated the familial animosity between the interested parties, especially between Machina's punishment witnesses and Andy and Schlumph, who Machina's family believes coached Z.N. to make a false outcry of sexual abuse in this case. In other words, this evidence was properly admitted to show the bias of two of Machina's punishment witnesses—Pamela and Linda. *See Carpenter*, 979 S.W.2d at 634; *Carroll*, 916 S.W.2d at 497-98; *Hanner*, 572 S.W.2d at 707 n.4; *see also Gonzales*, 929 S.W.2d at 549.

Machina also argues that the parking-lot evidence should have been excluded under Rule 403. *See* TEX. R. EVID. 403. We disagree.

As stated above, the evidence was relevant and necessary for the State to show the biases of both Pamela and Linda during the punishment phase of the trial. Moreover, this evidence did not take an inordinate time to develop. And though both Pamela and Linda had outbursts during their testimony, there is no evidence indicating that the jury's punishment decision was rendered on an improper basis, especially considering Machina received a sentence of fifty-five years' incarceration—near the middle of the sentencing range for the first-degree felony of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(e), (f)(1) (noting that aggravated sexual assault of a child is a first-degree felony and that the minimum term of imprisonment is increased to twenty-five

years when the child victim is younger than six years old at the time the offense is committed); *see also id.* § 12.32 (West 2019) (providing that the punishment for a first-degree felony is imprisonment "for life or any term of not more than 99 years or less than 5 years"). Accordingly, we cannot say that the trial court abused its discretion by admitting the parking-lot evidence over Machina's relevance and Rule 403 objections. *See* TEX. R. EVID. 403; *Gigliobianco*, 210 S.W.3d at 641-42; *Allen*, 108 S.W.3d at 284; *Jones*, 944 S.W.2d at 653; *Montgomery*, 810 S.W.2d at 389. We overrule his third issue.

### IV. CONSTITUTIONALITY OF THE TIME-PAYMENT FEE

In his fourth and final issue, Machina contends that the court cost imposed for a time-payment fee under section 133.103(b) and (d) of the Local Government Code is unconstitutional. As such, Machina requests that we modify the judgments by deleting $22.50 of the court costs assessed. The State counters that Machina did not preserve this issue for review and, in the alternative, that this statutory provision is constitutional.

Machina did not object to the imposition of court costs in the trial court. The cost bills were generated the same day as the judgments on April 10, 2018, but are not clearly incorporated into the judgments. The judgments includes a blank for "court costs," which states "SEE BELOW." The judgments also include a section entitled, "Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part hereof." The box next to this section in each judgment is not checked. However, only Count IV had a fine or any indication that any costs were assessed.

Convicted defendants may object to the assessment of mandatory court costs against them for the first time on appeal when the judgment does not contain an itemization of the imposed court costs. *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016); *see Bowden v. State*, 502 S.W.3d 913, 914 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Because the section 133.103 time-payment fees is a mandatory court cost imposed upon conviction for a felony or misdemeanor, and because the judgments in this case do not contain an itemization of the imposed court costs, we conclude that preservation of this complaint was not required. *See* TEX. LOCAL GOV'T CODE ANN. § 133.103(a) (providing that "[a] person convicted of an offense shall pay, in addition to all other costs, a fee of $25 if the person . . . has been convicted of a felony or misdemeanor; and . . . pays any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution"); *London*, 490 S.W.3d at 507; *Bowden*, 502 S.W.3d at 914.

With regard to the constitutionality of section 133.103(b) and (d) of the Local Government Code, this Court has previously held that these provisions are facially unconstitutional because the collected funds are sent into the general-revenue fund and are not sufficiently related to the criminal-justice system or a legitimate criminal-justice purpose. *See Simmons v. State*, No. 10-18-00269-CR, ___ S.W.3d ___, 2019 Tex. App. LEXIS 10355, at **16-17 (Tex. App.—Waco Nov. 27, 2019, no pet.) (citing *Johnson v. State*, 573 S.W.3d 328, 340 (Tex. App.—Houston [14th Dist.] 2019, pet. filed); *Dulin v. State*, Nos. 03-

18-00523-CR & 03-18-00524-CR, 583 S.W.3d 351, 2019 Tex. App. LEXIS 7084, at **4-5 (Tex. App.—Austin Aug. 14, 2019, pet. filed); *Kremplewski v. State*, No. 01-19-00033-CR, ___ S.W.3d. ___, 2019 Tex. App. LEXIS 6919, at **5-8 (Tex. App.—Houston [1st Dist.] Aug. 8, 2019, pet. filed); *King v. State*, No. 11-17-00179-CR, 2019 Tex. App. LEXIS 5902, at **13-14 (Tex. App.—Eastland July 11, 2019, no pet. h.) (mem. op., not designated for publication)). As such, we sustain Machina's fourth issue.

## V.    CONCLUSION

Because we have sustained Machina's fourth issue and concluded that ninety percent of the time-payment fee, as prescribed in section 133.103(b) and (d) of the Local Government Code, is facially unconstitutional, we modify the trial court's judgment in Count IV to change the time-payment fee from $25 to $2.50.  We affirm the trial court's judgment in Count III and in Count IV, as modified.


JOHN E. NEILL
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
(Chief Justice Gray dissenting)
Affirmed and affirmed as modified
Opinion delivered and filed March 11, 2020
Do not publish
[CR25]